## Commonwealth *v.* Thompson, Appellant.

Argued November 13, 1950. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

reargument refused April 9, 1951.

*Louis C. Glasso* and *Zeno Fritz,* for appellant.

*Samuel Strauss,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY MR. JUSTICE LADNER, March 19, 1951:

This is an appeal by the defendant from a conviction of murder in the first degree with death penalty and sentence imposed thereon.

Sometime between 7 and 8 p.m. on September 13, 1949, the defendant entered a drinking place at number 20 Townsend Street, Pittsburgh, known as the Barbary Coast Club. With a 45 calibre Colt revolver he shot Aaron Daniels through the left arm. Daniels had been talking to the bartender, Russell Wallace, and was turning from the bar to leave when he was shot. There was testimony that before the shot was fired the defendant said, "This is a stick-up, don't nobody move." The bartender remonstrated with the defendant and then said, "Don't kill me, if you want the money take the money. Don't kill me." There was further testimony that the bartender raised his hands in the air and that the defendant after reaching in the

bartender's pocket, backed him against the wall and shot him through the abdomen, killing him instantly. There was testimony also that then the defendant went behind the bar to the cash register. He then backed out of the door saying, "Nobody move, if you do, I will kill you."

There was thus ample evidence (testimony by five eye witnesses) to justify the verdict of the jury. On this appeal the defendant's present counsel complains that the defendant was deprived of a fair, impartial trial, because his court-appointed counsel did not sufficiently prepare for the trial and was indifferent to the defendant's rights; that by his conduct during the trial he caused the District Attorney and the court to make highly prejudicial remarks.

The court-appointed counsel, whose conduct is now assailed, was virtually the defendant's own choice, as appears from the supplemental opinion of the court in that there it is stated that originally Alvin Leith, Esq., a former Assistant District Attorney, had been appointed to represent the defendant by Judge McNAUGHER of Allegheny County. The defendant, however, refused to accept Mr. Leith as his counsel and wrote to Judge WEISS, then presiding in the Criminal Court, asking for the appointment of Adam Shaffer, Esq., instead. Judge WEISS responded by informing the defendant that he must accept the original appointment of Mr. Leith, whereupon defendant again wrote to Judge WEISS *that he would not permit anyone but Adam Shaffer to represent him.* Thereafter the defendant was brought before Judge WEISS in open court and informed that Mr. Leith was an able attorney and would fully protect the defendant's constitutional right and defend him to the uttermost, whereupon the defendant replied, "I want Adam Shaffer and will not permit anyone else to represent me."

Judge WEISS out of an abundance of caution and with a commendable desire to see that this defendant, who already had a bad criminal record and who now stood indicted for a capital offense should not be tried without counsel because of his own obstinacy, complied with the defendant's demand and appointed Adam Shaffer, Esq., defendant's counsel.

The constitutional right of the accused to be represented by counsel gives him the right to choose, at his own cost and expense, any lawyer that he may desire. When, however, he is unable to do so or is destitute or without means to employ counsel of his own choosing, the court will appoint counsel for him whose statutory compensation and personal expenses are payable by the county. The custom of the court to assign counsel in capital cases is an ancient one and was provided for by the law of this State long before the adoption of its present Constitution or of the 14th Amendment to the Federal Constitution: See Act of May 31, 1718, 1 Sm. L. 105, Section 4, 19 P.S. 783; and see the late Chief Justice MAXEY'S opinion in *Commonwealth ex rel. McGlinn v. Smith,* 344 Pa. 41, at page 45, 24 A. 2d 1, and footnotes thereto. In those early days it was deemed a proud service of the bar to accept such assignments as counsel from the court without compensation. It was not until 1907 that compensation and certain expenses were provided for: Act of March 22, 1907, P. L. 31, 19 P. S. 784. The amount of compensation then fixed has been substantially increased by the more recent Act of April 6, 1949, P. L. 406, 19 P.S. 784 (pocket part). We might well end discussion of this complaint here and dispose of it on the ground that the defendant made his choice and he must abide by it.

There is nothing in the record to show that the defendant's counsel did not properly prepare for trial.

The appellant's present counsel assumes that there were important witnesses who might have been called whose evidence would have been material, but that is not established. Having full confidence in the fairness and impartiality of the trial judge we prefer to accept his version of what occurred during the trial rather than that of present counsel who was not there and could not know what the "atmosphere" of the trial was. In the trial judge's opinion on the subject of the bickering of counsel (which we know occurs all too frequently in trials) and of the retaliatory remarks of the district attorney allegedly provoked by defendant's counsel, Judge WEISS states, "Defendant's counsel, Adam Shaffer, *fought vigorously* in behalf of his client and at times became engaged in argument with the Assistant District Attorney, Mr. Strauss and with the court, which is not unusual in this court's experience in any type of contested litigation—let alone a capital offense, but this court does not believe that it prejudiced the interest of the defendant one iota. The defendant throughout his brief complains about the failure of his counsel to more fully investigate and produce witnesses—but every single witness present at the time the murder was committed, testified. These witnesses all testified that this killing took place during the perpetration of a robbery, and the only denial to this record was the defendant, himself." We find no merit in this complaint.

The next complaint of appellant's present counsel is that the prosecuting attorney's frequent and unwarranted interruptions, his repeated prejudicial comments and disparaging remarks, directed toward the defendant's counsel and the defendant, deprived the latter of a fair trial. In support of this assertion appellant's present counsel has combed the entire record and presented some 43 instances of alleged misconduct on the

part of the district attorney which he claimed were prejudicial to the defendant's interest in the eyes of the jury. Superficially viewed and stripped from the context possibly some of these were unwise and perhaps improper but we have read them in connection with the entire record and agree with the learned court below that they had little if any effect on the jury and certainly no prejudicial effect. In matters such as this we must necessarily rely largely upon the impartiality of the presiding judge who is usually quick to intervene when intervention is called for as was done by the learned judge below on several occasions during the course of the trial. In this connection we think it well to quote what Judge ORLADY wisely said in *Com. v. Sarves,* 17 Pa. Superior Ct. 407, at p. 411 (1901), "While the printed record indicates that in the contest before the jury excessive earnestness on the part of contending counsel was displayed, and expressions of very doubtful professional propriety were used, yet it is not clear that the manner of trial injuriously affected the defendant. Such forensic displays rarely affect the deliberate judgment of a jury, and in this case they were conducted under the supervision of the trial judge who fully guarded the rights of the defendant in a temperate and impartial charge." What was there said will apply with equal force to this case. We note also as the district attorney in his brief points out that of the 43 remarks made during the trial of the case prior to the closing argument and now alleged as error by the appellant, in only five instances were there objections made at the time, and at no time was a motion made to withdraw a juror. This complaint therefore we also find to be without merit.

The next complaint is to the effect that the trial judge committed fundamental errors in his charge to the jury and under this heading eight instances have

been gathered from the record which defendant's present counsel claims to be fundamental error. We note preliminarily that no specific or general exceptions were taken to the charge nor was any complaint made at the time of the trial when the court specifically asked whether either of counsel had any suggestions to make or corrections to offer; thereupon counsel for the defendant did request additional instructions which the court treated specially in a supplement to his charge and which are not now assigned as error.

Of course it is the theory of present counsel for the defense that he can disavow responsibility for the trial counsel's action by calling him inattentive, neglectful and the like, but merely because a lawyer makes no objection we cannot infer that he neglected his duty. It is a well known fact that repeated objections, or too frequent objections and exceptions taken to every trivial matter, often give a jury an unfavorable impression. Moreover, we, like the court below, have as much right to infer that no exceptions were taken to the charge or the matters now complained of because counsel in his judgment felt they were neither material nor resulted in any unfairness to the defendant. In the circumstances we cannot infer that the failure of counsel to object or insist on exceptions is necessarily neglect. It might be and frequently is the exercise of a wise judgment. It is a familiar observation that cases are better tried from the "side lines" by lawyers who would do no better in the heat of the conflict if they conducted the trial. And of course it is easy to condemn the exercise of counsel's judgment after the case is lost which would be praised if the case were won. But no lawyer can be expected to do more than exercise a reasonable skill which cannot be fairly judged by the result of the trial alone. Nevertheless we will briefly consider the eight complaints

of the charge now made to see if any involve fundamental error.

Appellant's counsel complains (a) that the trial judge improperly assumed that the killing was committed in the perpetration of a robbery. This is not a just criticism of the charge for the judge did nothing more than express his opinion as to the weight of the testimony of five disinterested eye witnesses who agreed that the defendant said it was a stick-up. The only witness who denied this was the defendant himself. We do not think the judge went beyond the bounds of propriety as recently announced in *Commonwealth v. Watts*, 358 Pa. 92, 56 A. 2d 81 (1948) in which Mr. Justice HORACE STERN after reviewing the earlier cases in point said at p. 97, "It is well settled that it is not error for a judge to express his opinion as to the weight and effect of the evidence or even the guilt or innocence of the defendant provided this is done fairly and not intemperately, and provided also he does not give a binding direction or interfere with the province of the jury" and see words to the same effect in *Com. v. Simmons*, 361 Pa. 391, at p. 407, 65 A. 2d 353 (1949).

Likewise complaint is made that the charge here failed to mention sufficiently the defendant's further claims that he was under the influence and addicted to marijuana cigarettes and under the influence of liquor. The trial judge did not, in his charge, usurp the function of the jury or take from them the decision on the questions, for after reviewing the testimony of the defendant he concluded with the following, "He [i.e., the defendant] denies that he said it was a stick-up. That he does remember. He says that he does not remember running his hands through the pockets of the deceased. In fact, he denied several times that he said it was a stick-up. He tells you he knows Mrs.

Spells but does not remember going and talking to her. He says that he does not remember the Triangle Bar. Does not remember only firing one shot. He denies that he said he does not use marijuana cigarettes. . . . Counsel for the defendant has contended that the defendant should be acquitted because he used and was an addict to marijuana and therefore he didn't have the right frame of mind, he didn't know what he was doing. . . . We are certain that you have listened to the charge and have been very courteous. I say these are opinions of mine. This Court cannot agree with counsel for the defendant that this defendant, Cleveland Thompson, should be acquitted. The evidence appears overwhelming in this case to me, and yet may not to you. This was a killing, the taking of a human life in the attempting or the perpetration of robbery. The question of this man's guilt or innocence rests entirely with you and you are free to do what you please and, I repeat again, it is for you to consider the evidence and render your own free will decision in this case. And remember again, it is not my view but yours which is to control. The Commonwealth has produced many witnesses and has asked you to return a verdict of first degree murder with the death penalty, if you believe the Commonwealth's view. While the defendant asks for an acquittal, or a milder verdict, which is in your hands. In deliberating upon your verdict you will be confronted at points in the testimony with contradictions as between witnesses for the Commonwealth and the defendant. You must determine to your own satisfaction who has told you the truth. In deciding what the evidence discloses as to the facts, you should carefully consider and weigh the testimony of each witness. Take into consideration the witness's manner and appearance as he testified. Did his demeanor suggest honesty, frankness, sincerity, and ob-

vious desire to give the facts as accurately as they could be recalled; or did it leave upon you the impression of evasiveness, dishonesty, unreliability? Did it bear the stamp of reasonableness or a lack of it? To what extent, if any, was it contradicted or corroborated either by other testimony or by facts and circumstances proved in the case? Were contradictory statements made by the same witness at another time and not satisfactorily explained? What were the witnesses' opportunities for acquiring knowledge of the facts? Were his statements clear, logical and consistent, or did he, while on the stand, contradict himself?

"You should consider whether the witness is interested in what your verdict shall be. If he is, did that interest in any wise color his testimony or cause him to testify falsely or withhold a part of the truth? The defendant is an interested witness. You may find that there are others who are interested. And yet the defendant, as well as any others, may have told you the exact truth as he knows it. You are to decide that."

Surely it is obvious that the court fairly left the questions to the jury. There is no merit in this complaint and the court committed no fundamental error in this regard.

(b) The next complaint is that the trial judge charged the jury in effect that where murder is committed in perpetration of a robbery, it is first degree murder irrespective of intent and therefore the fact that defendant had been drinking to excess had no legal significance or bearing upon the degree of his crime. What counsel complains of is the part of the charge appearing on page 485a of the record where, citing *Com. v. Wooding*, 355 Pa. 555, 557, 50 A. 2d 328, he charges, "The Pennsylvania Supreme Court in clear, concise language has declared that: 'Where a murder is committed in the perpetration of a robbery, or a

burglary, it is irrespective of any question of intent, it is deemed murder in the first degree, and therefore, the fact that this defendant may have been drinking to excess has no legal significance as bearing upon the degree of his crime.' "

It is true that the defendant denied that the killing was done in the perpetration of a robbery and of course if the jury believed that denial it was bound, before determining the murder to have been of the first degree, to find that it was committed wilfully, deliberately and with premeditation. In such event the use of a drug such as marijuana or excessive drunkenness might be a material consideration. This was recognized by the learned trial judge who later in his charge said, "Now, members of the jury, at this point I desire to call to your attention the effect of the drunkenness of this defendant, or that he was under the influence of marijuana, or a drug at the time of this occurrence. That is a fact for you to find. The law is that if a defendant in a criminal case desires to set up as a defense his drunkenness, or that he suffered a lapse of memory because of his addiction to a morphine drug, he must establish that either by his own testimony or by the testimony of the Commonwealth, or by all of the testimony, by a preponderance or the fair weight of the credible testimony that such is a fact. In this case, we say to you, that if this defendant was drunk, or under the influence of a marijuana drug to the extent that he could not form any intent to take life, that he could not wilfully, deliberately and premeditatedly intend to kill and murder the deceased, then you would not be warranted, even though you were convinced beyond a reasonable doubt of the guilt of the defendant, in finding him guilty of murder of the first degree, solely for the reason that if he was drunk, or under the influence of marijuana drugs, to the ex-

tent that his reason was dethroned, he could not form an intent to take life; he could not premeditate it wilfully and deliberately and frame it in his mind, even though you are convinced of his guilt beyond a reasonable doubt, you would not be able to go higher than second degree murder, but, in any event, his drunkenness or addiction to marijuana drugs would not entitle him to take human life and go scot free." Later on, after the conclusion of the charge, at the request of defendant's counsel, he amplified this statement. We think that what the learned trial judge said on this question is in accordance with the governing principles of law as recently stated in *Commonwealth v. Samuel Jones,* 355 Pa. 522, 531, 50 A. 2d 317 (1947).

(c) Again, counsel to support his argument that the trial judge committed error in charging on the question of reasonable doubt quotes an isolated sentence of the charge, but if we read all that the trial judge said on that subject immediately preceding as well as following, it is obvious that no error was committed. What the judge said was as follows: "The defendant is presumed to be innocent of all crime, unless and until the Commonwealth satisfies you of his guilt of a particular grade of crime beyond a reasonable doubt. This presumption of innocence should be treated not as a mere makeweight but as a complete defense, unless the evidence, in your opinion, overcomes it in the manner stated. I have said that the Commonwealth must satisfy you beyond a reasonable doubt of the guilt of the defendant before you can convict him. It is your duty to give him the benefit of any such doubt, if it exists. By reasonable doubt is meant such a doubt as may arise out of the evidence and prevent you from coming to a satisfactory conclusion. It must not be merely fancied or conjured up for purpose of escaping what you might consider a disagreeable duty.

It must be an honest doubt, such a doubt as fairly strikes a conscientious mind and clouds the judgment. If your minds be fairly satisfied of a fact, to the extent that would induce a man of reasonable firmness of judgment to take it as true and to act upon it in a matter of the highest importance to himself, then you may consider that fact as sufficiently established to found a verdict upon it. If you are not thus satisfied, you are not to accept as a fact that which is alleged to be so. The Commonwealth is required to prove beyond a reasonable doubt all the elements necessary to constitute the crime or the particular grade of crime and, unless they are so proved, the verdict as to the crime or the particular grade of crime must be Not Guilty, and this is because the defendant is presumed to be innocent until proved guilty." We find no merit in this complaint.

(d) For the same reason we find no merit in complaint (d) alleging error in failing to review the testimony so as to indicate how the same was applicable to second degree murder or voluntary manslaughter. In view of what the court said on this subject quoted hereinbefore under heading (b) it is sufficient to say we find no error in this regard: *Com. v. Schurtz*, 337 Pa. 405, 411, 10 A. 2d 378 (1940).

Nor is there merit to (e), wherein it is charged that the trial judge's definition of murder in second degree was confusing. We will not expand this opinion, now overly long, by more quotations from the charge. It is enough to say we have read and re-read the charge carefully and find the complaint as baseless as the others and refuted by pages 459a, 461a and 486a of the charge in the record.

(f) Counsel next complains that the court failed to instruct the jury as to accidental killing and in not defining accidental killing. Counsel admits that there

was no evidence in the case warranting the jury to return a verdict based on accidental killing. Having made this admission we do not see why it is argued at all. This objection is therefore clearly without merit.

(g) Next it is urged the court erred in praising one of the Commonwealth's witness (a police lieutenant). What the learned trial judge said would have been better left unsaid but we find no exception was made in this regard and we do not regard it as fundamental error.

(h) It is urged that there was error in that the court failed to charge that the testimony of the Commonwealth's witnesses called in rebuttal was to be considered only as affecting the credibility and not as substantive proof of defendant's guilt.

The testimony of the two rebuttal witnesses complained of amounted only to a denial that certain statements, made by the defendant, were true. The jury could not have understood this testimony in any manner other than a mere contradiction of the truth of the defendant's statement. The court reviewed briefly their testimony in his charge (479a) and as we read it the jury could not have misunderstood the effect of the testimony. In any event, no specific instructions nor additional instructions were asked on this point and we do not consider the omission fundamental error requiring a reversal: *Com. v. Schroeder,* 302 Pa. 1, 152 A. 835 (1930).

Finally it is urged that the trial court erred in permitting the penalties imposed upon defendant after his conviction of felonious assault and sentences imposed thereon be read to the jury. We cannot see that the admission of the penalty along with the conviction, all of which was part of the same record, did the defendant any harm, especially as the record was that

of a court martial where the sentence following conviction must be approved by the commanding officer and such sentence and approval are all part of one document. Moreover it appears from the record of *Commonwealth v. DePofi*, 362 Pa. 229, 66 A. 2d 649 (1949) that the penalties were read along with the record of the convictions, being part of the whole record which that case held admissible for the purpose set forth.

The judgment and sentence is affirmed.