394 A.2d 932

David PARKER et al., Appellants in Nos. 709, 710,
Appellees in No. 628

v.

CHILDREN'S HOSPITAL OF PHILADELPHIA, Appellee
in Nos. 709, 710

and

Commonwealth of Pennsylvania (Intervenor) Appellant in
No. 628.

Jorge L. GARCIA et al., Appellants in Nos. 711, 712,
Appellee in No. 627

v.

KENSINGTON HOSPITAL, Appellee in Nos. 711, 172

and

Commonwealth of Pennsylvania (Intervenor) Appellant in
No. 627.

Leonard Carl BOST, Jr., Appellant in Nos. 713, 714,
Appellee in No. 624

v.

PHILADELPHIA COLLEGE OF OSTEOPATHIC MEDICINE
et al., Appellees in Nos. 713, 714

and

Commonwealth of Pennsylvania (Intervenor) Appellant in
No. 624.

Supreme Court of Pennsylvania.

Nov. 1, 1978.

112

Robert P. Kane, Atty. Gen., Gerald Gornish, Deputy Atty. Gen., Harrisburg, for appellant at Nos. 624, 627, 628 and appellees at Nos. 709 to 714.

Stephen M. Feldman, Philadelphia, for appellants at Nos. 709 & 710 and appellees at No. 628.

Albert S. Fein, Philadelphia, for appellants at Nos. 711 & 712 and appellees at No. 627.

Marshall A. Bernstein, Philadelphia, for appellant at Nos. 713 & 714 and appellee at No. 624.

Adrian R. King, Philadelphia, for appellee at No. 624.

White & Williams, John J. Dautrich, Philadelphia, for appellees at Nos. 627 & 628 and Nos. 709 to 712.

Philip M. Gilligan, Philadelphia, for appellees at Nos. 711 & 712.

Barton L. Post, Philadelphia, for appellees at Nos. 712 & 714.

Francis E. Shields, Philadelphia, for amicus curiae at Nos. 624, 627, 628.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

We are here presented with consolidated cases which
present the question of the constitutionality of the compul-
sory arbitration provisions of the Pennsylvania Health Care
Services Malpractice Act (hereinafter referred to as the
"Act"), Act of October 15, 1975, P.L. 390, No. 111, § 101 *et
seq.*, 40 P.S. § 1301.101 *et seq.* (Supp.1977). This Act pro-
vides that all claims for malpractice against doctors of
medicine, osteopathy, and podiatry, as well as hospitals,
nursing homes, health maintenance organizations and their
officers, employees or agents must, in the first instance, be
submitted to arbitration before access to the courts is per-
mitted. In an effort to challenge the validity of the Act,
appellants, David and Lether Parker, Jorge Garcia and
Leonard Bost, Jr. instituted three separate malpractice ac-
tions in the Court of Common Pleas of Philadelphia County.[1]
Preliminary objections raising the jurisdictional question
were filed by all defendants. In response thereto, appellants
asserted that the arbitration provisions of the Malpractice
Act were unconstitutional on several grounds.

Pursuant to Pennsylvania Rule of Civil Procedure 235
notice of appellants' contentions was sent to the Attorney
General of Pennsylvania, who then intervened on behalf of
the Commonwealth. Thereafter appellants filed three com-
panion Declaratory Judgment Actions raising the same con-
stitutional challenges.[2] All six actions were consolidated by

---

1. Since these are cross appeals the respective parties are both appel-
lants and appellees. For purposes of clarity in this Opinion we refer
to the original plaintiffs as appellants and the defendants as appel-
lees. The intervenor will be referred to by name, i. e. the Common-
wealth. The Pennsylvania Medical Society was granted leave to
participate *amicus curiae.*

2. In the court below the Commonwealth attacked by way of prelimi-
nary objections, the propriety of the three declaratory judgment
actions because of the earlier pendency of the three tort claims. This

the court below for the taking of testimony, argument and disposition.

The court below in a carefully considered opinion rejected all of the contentions of appellants and sustained all challenged portions of the statute with the exception of Section 510, which permitted the admission of the decision of the arbitration panel and its factual findings at a trial *de novo.* The appellants appealed to the Commonwealth Court from that part of the order upholding the constitutionality of the Act. Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 402(1), 17 P.S. § 211.402(1) (Supp.1978–79). The Commonwealth filed an appeal in this Court from that portion of the order holding Section 510 to be unconstitutional. See Act of July 31, 1970, P.L. 673 No. 223, art. II, § 202(9), 17 P.S. § 211.202(9) (Supp.1978–79). The appeal lodged in the Commonwealth Court was transferred to this Court and the two matters are now before us for disposition.

The case of *Parker v. Children's Hospital of Philadelphia* relates to the death of an 18-month-old child resulting from an alleged negligent failure to diagnose meningitis. The parents acting as the administrators of the estate of their deceased child brought death and survival actions seeking damages. Suit was instituted in *Garcia v. Kensington Hospital,* as the result of the death of a 23-year-old housewife who allegedly received an improper administration of drugs following an unconsented to operation. *Bost v. Philadelphia College of Osteopathic Medicine* involved an action seeking damages for injuries sustained when a piece of a forcep broke off and became lodged in the patient's throat.

■ Before turning to the merits of the constitutional contentions raised by the parties, an overview of the statute and the objectives it sought to accomplish is in order. The Act was designed to make available professional insurance at a reasonable cost and to establish a system through which

issue was cited against the Commonwealth. We note that although the Commonwealth has alluded to the question in a footnote in its brief filed in this Court, the issue is not being pressed in this appeal and thus does not require discussion in this Opinion.

a victim who has sustained injury or death as a result of a tort or breach of contract by a health care provider can be assured of a prompt adjudication of the claim and a fair recovery for the losses sustained. A compulsory arbitration system was devised in an effort to reduce frivolous claims and to expedite the disposition of cases in this area. While the Act conditioned the right of trial by jury upon first proceeding to arbitration, it also attempted to assure a successful plaintiff that any judgment ultimately entered would be satisfied by the malpractice insurance which the various health care providers were required under the Act to maintain. Additionally, a fund administered by the state was established to pay judgments in excess of the insurance limits. Additionally, the Act addressed the competency of medical services by giving various state health care licensing and regulatory boards additional funds, authority and personnel to investigate and institute license suspension and revocation cases.[3]

The position of Administrator for Arbitration Panels for Health Care was established within the Department of Justice. The staff of the administrator is funded from fees charged to each health care provider practicing in the Commonwealth.[4] The administrator is empowered to promulgate such rules and regulations as are necessary to carry out the arbitration provisions of the Act. The Act provides for compulsory arbitration of malpractice cases in which health care providers are defendants. There may be a joinder of

3. The principle substantive and procedural provisions include: a mandatory arbitration system; reduction of awards by collateral benefits; a limited sliding scale for attorney's fees; and a limitation of a health care provider's liability exposure to four years from the date of a breach of contract or tort after which time the medical Professional Liability Catastrophe Loss Fund is responsible for defending and paying claims.

4. A "health care provider" is statutorily defined as:
"a primary health center or a person, corporation, facility institution or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, an osteopathic physician or surgeon, a podiatrist, hospital, nursing home, and . . . an officer, employee or agent or any of them acting in the course and scope of his employment."

additional parties who may be necessary and proper for a just determination of a claim, whether or not the additional parties are health care providers. The administrator has been empowered to rule on all preliminary motions and to consider and approve offers of settlement for fiduciaries, minors and incompetents prior to appointment of an arbitration panel chairman.

Arbitration panels are to consist of two attorneys, two health care providers and three lay persons. The administrator has the right to select one of the two attorney members to serve as chairman, who then shall determine all questions of law including evidentiary matters and instructions to the panel after the presentation of the case. Each litigant is provided with a list of five candidates for each category of panel membership with biographical information. A designated number of preemptory challenges are allotted to each litigant and there is an unlimited number of challenges for cause.

As we proceed to consider the various constitutional challenges raised herein it must be remembered that a legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. All doubts are to be resolved in favor of a finding of constitutionality. *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975); *Glancey v. Casey*, 447 Pa. 77, 288 A.2d 812 (1972); *Milk Control Commission v. Battista*, 413 Pa. 652, 198 A.2d 840 (1964); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963). The legislature must be respected in its attempt to exercise the State's police power and the power of judicial review must not be used as a means by which the courts might substitute its judgment as to public policy for that of the legislature. *Glancey v. Casey, supra,* 447 Pa. 77, 84, 288 A.2d 812, 816 (1972):

"Time and again, we have taken the position that the judiciary does not question the *wisdom* of the action of a legislative body." (emphasis in original)

The first question to be considered is whether Art. I, section 6 of the Pennsylvania Constitution which provides for the right to trial by jury, is offended by the requirement that the complaining party must first proceed to arbitration as a condition precedent to trial by jury. With the ever increasing demand upon judicial time, one of the accepted solutions in recent years has been the attempt to divert dispute-resolution, where appropriate, to forums other than the court rooms.[5] This trend has been motivated by the realization that the traditional trial is not necessarily the exclusive and only effective means by which the disagreements that arise within our society may be resolved. While the salutory benefits of alternative dispute-resolution do not justify a callous disregard of the responsibility to provide trial by jury in instances where that right has been assured by the organic law, it does provide a basis for not construing constitutional provisions guaranteeing the right to jury in such a manner as would exclude any other method for disposing of disputes.

Art. I, section 6 has been construed as requiring the right to trial by jury in all matters in which the right to a jury trial has been recognized at the time of the adoption of the Constitution of 1790. *Van Swartow v. Commonwealth*, 24 Pa. 131 (1854).

". . . the trial by jury as it was at the formation of the Constitution, and the right as it then existed, does remain inviolate. Every class of cases triable by jury in

5. Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitution Implications*, 55 Tex.L.Rev. 759–800 (1977); Crittenden, *Is Arbitration A Viable Alternative to Litigation? What May or Must Be Arbitrated? A Reinsurance Perspective*, 13 Forum 223–36 (1977); Nolas, *Arbitration of Medical Malpractice Claims*, 13 Forum 254–65 (1977); Friedman, *Arbitration in Medical Malpractice*, 13 Trial 49–52 (1977); Ladimer & Solomon, *Medical Malpractice Arbitration: laws, programs, cases*, 1977 Ins.L.J. 335–65; Hentz, *Arbitration of Medical Malpractice Claims: Is It Cost Effective?*, 36 Md.L.Rev. 533–52 (1977); Comment, *Alternatives to the Medical Malpractice Phenomenon: Damage Limitations, Malpractice Review Panels and Countersuits*, 34 Wash & Lee.L.Rev. 1179–200 (1977); Note, *Medical Malpractice Arbitration: A Comparative Analysis*, 62 Va.L.Rev. 1285–310 (1976).

1790, are still triable in no other way; . . ." *Van Swartow v. Commonwealth, supra,* 24 Pa. at 133–34.

All of the parties here accept the applicability of the right to jury trial provision of Art. I, section 6 to the instant tort actions thus we need only consider whether there has been such an infringement upon that right, by the legislation in question, as reach constitutional proportions.[6] Under our case law it is clear that our constitutional provision does not require an absolutely unfettered right to trial by jury. In this Court's decision in *Emerick v. Harris,* 1 Binney 416 (1808), Justice Yeates ruled that an increase in the jurisdiction of justices of the peace which caused certain matters which previously required resolution by a jury to be disposed of in a summary proceeding was not violative of Article I, section 6 since the right of trial by jury was available on appeal, "though the party may be subjected to some inconvenience in making his election." *Id.* at 425. Moreover, it is clear that arbitration as a condition precedent to trial does not, per se, violate Article I, section 6. *Smith's Case,* 381 Pa. 223, 112 A.2d 625 (1955), appeal dismissed, 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1955). In *Smith's Case, supra,* the Court was called upon to consider the constitutionality of a legislative enactment and a rule of court promulgated pursuant to it, which required submission to compulsory arbitration of cases where the sums claimed were under a certain stated amount. In passing upon the legislation's compatibility with the constitutional provision guaranteeing the right of trial by jury that decision stressed:

"The only purpose of the constitutional provision is to secure the right of trial by jury before rights of persons or

---

**6.** Although the development of the law of torts can be traced to early English law, it was not until much later that negligence began to be recognized as a separate and independent basis of tort liability. Winfield, *The History of Negligence in the Law of Torts,* 1926, 42 L.Q.Rev. 184. However, one of the earliest appearances of what we now know as negligence was in the liability of one who held himself out as a surgeon. Arterburn, *The Origin and First Test of Public Callings,* 1927, 75 V.Pa.L.Rev. 411. *See generally,* M. J. Horiwitz, *The Transformation of American Law,* 1780–1860 (1977).

property are *finally* determined." (emphasis in original text) *Id.*, 381 Pa. at 230, 112 A.2d at 629.

Thus the teaching of *Smith's Case, supra,* instructs us that a legislative requirement that a claimant seek redress through an alternative procedure, e. g. arbitration, in the first instance does not offend Article I, section 6 provided the right to trial by jury is available prior to a final determination of the respective rights of the parties. However, *Smith's Case, supra* further cautioned:

> "All that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable." *Id.*, 381 Pa. at 231, 112 A.2d 629.

Appellants herein mold their constitutional objection from this language and contend that malpractice cases are complicated, expensive and difficult to try, and thus a prerequisite which would require two trials imposes in these cases an onerous condition, making the right to trial by jury practically unavailable. The first weakness in appellants position is the assumption that there will necessarily be a need for the second proceeding to obtain a fair recovery for the injured party's loss. The legislative intent was to provide a more expeditious disposition to enable the victim to avoid the interminable delays that all too frequently occur in the regular court process.[7] Nor is there any basis for concluding that the awards rendered in arbitration would not fairly compensate the victim to the full extent to which he or she is entitled. Further, the Act mandates the necessary insurance that virtually assures the satisfaction of the award of damages that are determined to be appropriate. Rather

---

7. Appellants stress the difficulties encountered by plaintiffs in these actions in securing and paying the expert witnesses necessary to establish the case. Arbitration however, provides the flexibility that will permit an accommodation to the schedules of these witnesses that could not be obtained in the traditional trial setting. Thus arbitration not only facilitates the availability of these witnesses, it also tends to decrease the cost of their appearance since these hearings eliminate much of the loss of time associated with regular trials.

than imposing a burden, this legislation is designed to afford the plaintiff a swifter adjudication of his claim, at a minimal cost and guarantees the satisfaction of the judgment obtained. The Act further discourages dilatory and frivolous appeals by parties by providing for the imposition of all costs of both arbitration and trial, which includes the expenses of expert witnesses on the losing party if the trial court finds that the basis for the appeal was capricious, frivolous and unreasonable.[8] We are therefore satisfied that any theoretical burden upon the victim's right to trial by jury is counterbalanced by the substantial advantages provided to him or her under the Act and is not the type of "onerous" restriction alluded to in *Smith*.

We are not here concerned with a question of curtailing a constitutionally conferred right because of the existence of a competing constitutional right or duty. *See e. g. Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283 (1973). Here it is only the postponement of the availability of the right that is in question. Where the reason for the postponement of the right results from the effort on the part of the state to achieve a compelling state interest and the procedure is reasonably designed to effectuate the desired objective, it cannot be said that there has been a constitutionally impermissible encroachment upon that right. The acceptance in this jurisdiction of arbitration as a viable, expeditious, alternative method of dispute-resolution is no longer subject to question. *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 662–63, 331 A.2d 184, 185 (1975); *Capecci v. Joseph Capecci, Inc.*, 392 Pa. 32, 139 A.2d 563 (1958); *Children's Hospital of Philadelphia v. American Arbitration Ass'n.*, 231 Pa.Super. 230, 234, 331 A.2d 848, 850 (1974). Nor does the fact that the arbitration here is compulsory rather than voluntary, detract from its usefulness for this purpose. *Smith's Case, supra.* We are therefore satisfied that the

8. Trial judges are encouraged to apply this portion of section 509 where the facts warrant its use. The appropriate use of this provision is critical to a realization of the objectives of the Act and will serve as a significant deterrent to those who would attempt to misuse the appeal process.

precondition of compulsory arbitration in cases of this type does not present the type of "onerous" restriction which we referred to in *Smith's Case.*

█ In reaching our conclusion today we are relying upon the legislative judgment that the procedures provided for under the Act will substantially expedite the disposition of malpractice cases in this jurisdiction. We are aware of many instances where arbitration has been used in other areas of dispute-resolution where it has produced significant results in expediting the disposition of those matters. The stated purpose of the Act expressly provides as an objective that one who sustains injury or death as a result of the fault of a health care provider *"can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation."* See § 102. In conferring upon the administrator the power to promulgate rules and regulations the General Assembly charged that the power was given to effectuate the purposes of the Act. Appellants have cited statistics which would indicate that the present performance of this procedure has been far from impressive in demonstrating its capacity to provide an expeditious disposition of these cases. Nevertheless the period of time covered by the accumulated data is insufficient to establish either that the legislative scheme is incapable of achieving its stated purposes or that the administrator is unable or unwilling to provide the administration that will insure the prompt and fair resolution promised. It is an accepted principle of constitutional law that deference to a coequal branch of government requires that we accord a reasonable period of the time to test the effectiveness of legislation.

"Even where the social undesirability of a law may be convincingly urged, invalidation of the law by a court debilitates popular democratic government. Most laws dealing with economic and social problems are matters of trial and error. That which before trial appears to be demonstrably bad may belie prophecy in actual operation. It may not prove good, but it may prove innocuous. But

even if a law is found wanting on trial, it is better that its defect should be demonstrated and removed than that the law should be aborted by judicial fiat." *American Federation of Labor v. American Sash & Door Co.*, 335 U.S. 538, 553, 69 S.Ct. 258, 265, 93 L.Ed. 222 (1949) (Frankfurter, J., concurring). [Footnote omitted]

█ Although the trial court ruled that the arbitration provisions in general did not violate Article I, section 6, that court did conclude that section 510 of the Malpractice Act was unconstitutional.

Section 510 provides:

"Where an appeal is taken the decision, and findings of fact, if any, of the arbitration panel shall be admissible as evidence before the court; provided, however, that any award of damages shall not be admissible as evidence."

In reaching the conclusion that section 510 was incompatible with Article I, section 6, that court considered several factors. First, the court expressed concern as to the probative value of this evidence because the panels included only two members who are health care providers. While initially the non-health care members of the panel may not have a particular expertise in the area, it is reasonable to anticipate that it should be quickly acquired in the discharge of their responsibilities. Moreover this approach ignores the obvious legislative purpose in drafting the section. Section 510, like that portion of section 509 to which we previously referred, was placed in the Act to discourage the use of the arbitration phase of the proceedings as a dress rehearsal or as an additional discovery stage. As we have indicated it was reasonable for the legislature to attempt to assure that arbitration be viewed as a serious dispute-resolution forum and that capricious, frivolous and unreasonable appeals be discouraged. This is not incompatible with the *Smith's Case* mandate for the access to trial by jury prior to a final determination of the respective rights of the parties. While this section admittedly is designed to discourage the meritless appeal it does not foreclose the right to seek a jury resolution of the controversy nor does it abridge or curtail

any of the incidents of that right. The section speaks only to the admissibility of the decision and the findings of fact of the arbitrators. It neither places that information in the status of a presumption nor does it shift the burden of going forward with evidence or change the burden of persuasion. The jury remains the final arbiter of the issues raised and the facts presented.

In *Meeker v. Lehigh Valley R.R. Co.,* 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915) the United States Supreme Court held that a provision permitting the introduction of prior findings and an order of the Interstate Commerce Commission as prima facie evidence of facts contained therein in civil actions by a shipper against a defendant carrier did not violate the right to trial by jury. The court there stated that the admission into evidence of the administrative finding:

> "cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either the court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents." 236 U.S. at 430, 35 S.Ct. at 335, 59 L.Ed. at 657; *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 at 748 (1977).

On another occasion Mr. Justice Brandeis observed: "The command . . . that 'the right of trial by jury shall be preserved' does not require that old forms practice and procedure be retained . . . It does not prohibit the introduction of new methods for determining what facts are actually in issue, *nor does it prohibit the introduction of new rules of evidence." Ex parte Peterson,* 253 U.S. 300, 300–11, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920) (emphasis added); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 452 (1978).

 The trial court expressed the view that Article I, Section 6, required that a trial *de novo* must allow for the *full consideration of the case anew.* As a general principle we agree, but we do not accept the conclusion that this principle restricts the type of evidence that may be present-

ed to that jury. In *Commonwealth v. Harmon*, 469 Pa. 490, 366 A.2d 895 (1976), we held that the right of appeal for trial *de novo* did not embrace the right to relitigate a pre-trial suppression motion. We reached this result even though the evidence admitted under the pre-trial ruling "might have a significant impact upon the ultimate verdict." *Id.*, 469 Pa. at 496, 366 A.2d at 898.

The right to trial by jury assures that the jury will be the final arbiter of the facts presented, it does not determine the competency of the evidence to be presented to that tribunal. For years in this jurisdiction we permitted the trial court to express its views as to the guilt or innocence of the accused in criminal trials provided the court left the final decision to the jury. *Commonwealth v. Bibalo*, 375 Pa. 257, 100 A.2d 45 (1953); *Commonwealth v. Thompson*, 367 Pa. 102, 79 A.2d 401 (1951), *cert. denied* 342 U.S. 835, 72 S.Ct. 58, 96 L.Ed. 631 (1951), *cert. denied* 342 U.S. 929, 72 S.Ct. 370, 96 L.Ed. 692 (1952); *Commonwealth v. Zietz*, 364 Pa. 294, 72 A.2d 282 (1950); *Commonwealth v. Foster*, 364 Pa. 288, 72 A.2d 279 (1950); *Commonwealth v. Simmons*, 361 Pa. 391, 65 A.2d 353 (1949), *cert. denied* 338 U.S. 862, 70 S.Ct. 96, 94 L.Ed. 528 (1949), *rehearing denied* 338 U.S. 888, 70 S.Ct. 181, 94 L.Ed. 546 (1949); *Commonwealth v. Watts*, 358 Pa. 92, 56 A.2d 81 (1948). See Pa.Law Encyclopedia, Vol. 10A, § 634. These cases rested upon the premise that when the expression of opinion was done fairly, based upon reasonable grounds and clearly advised the jury of its right to make the final judgment, the right to trial by jury was not offended. When this practice was finally discarded, we did so only because the Court was of the view that the position of the judge in a criminal trial was such that the jury would feel compelled to accept the court's view without exercising their independent judgment. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972). We do not believe that the relationship of the arbitration panel to a jury which is subsequently empanelled upon appeal, is such that would justify a fear of coercion. We cannot assume that if the trial court properly instructs the jury, it

will do otherwise than perform its role as the exclusive finder of fact simply because evidence of the decision and findings of fact of the arbitrator is admissible. *Halpern v. Gozan*, 85 Misc.2d 753, 381 N.Y.S.2d 44 (Super.Ct.1976). With the exception of an Ohio trial court [9] which invalidated a provision not analogous to our own in that it provided that either party could call the individual arbitrator to testify at the trial, courts which have considered the matter have sustained this legislative modification of what is admissible in evidence in the court trial of these cases. *Eastin v. Bloomfield, supra; State ex rel. Strykowski v. Wilkie, supra; Pendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977); *Comiskey v. Arlen*, 55 App.Div.2d 304, 390 N.Y.S.2d 122 (1976). In any event, appellants have not sustained their burden of showing that the admission into evidence of the findings of the arbitration panel is clearly, palpably and plainly repugnant to the jury trial right guaranteed by the Constitution of Pennsylvania. *See Daly v. Hemphill, supra.* We are therefore constrained to disagree with that portion of the lower court's order which holds section 510 to be unconstitutional.

Appellants also charge that the Act improperly vested judicial power in the panel and conferred judicial functions upon the Administrator all in violation of Article V, of the Pennsylvania Constitution. Appellants contend that the power conferred under the Act to the Administrator to promulgate rules and regulations necessary to fulfill the provisions of the Act violates Article V, Section 10(c) which vests in the courts the exclusive power to prescribe rules of practice and procedure for the courts. In this context appellants set forth in detail instances where the procedure for arbitration proceedings are at variance with the rules of court. Appellants also point to the power of the Administrator to pass upon motions prior to the appointment of a panel chairman as illustrative of an improper delegation of a judicial function in violation of Sections 1, 12 and 13 of

9. *Simon v. St. Elizabeth Medical Center*, 3 Ohio Ops.3d 164, 355 N.E.2d 903 (1976, Common Pleas).

Article V.[10] The appellants' argument relating to the vesting of alleged judicial functions in the Administrator must necessarily rest upon a finding that the arbitration procedure is in fact a judicial function. Clearly, an administrative body or its executive officer can be vested with the powers herein involved to carry out the administrative duties assigned by statute. We therefore must look to see if Article V prohibits the administrative resolution of a malpractice claim. Restated, the question presented by appellants Article V objections is whether the legislature may provide an alternative administrative remedy for the resolution of a malpractice claim.

Appellants urge that we accept a dichotomy that distinguishes between judicial functions which may not be delegated to an administrative agency and administrative remedies which may be determined by an administrative body. Using this test they argue that where there has been a traditional common law remedy it may not be replaced by an administrative remedy. In response we again stress that the legislature has not here removed the traditional judicial remedy but rather has added a new administrative remedy. It has long been recognized that the exercise of adjudicative functions by administrative bodies is not a withdrawal of the judicial function from the courts in contravention of the constitutional doctrine of the separation of powers. *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Under the format of the instant statute the legislature has neither infringed upon nor set aside the judicial power as defined in Article V in creating the office of the Administrator and in defining the jurisdiction of the arbitration panel. The Act accords the disappointed party to the administrative process the absolute right to a trial *de novo* wherein both factual and legal questions may be fully relitigated before the court. As noted by the Supreme Court of Wisconsin, in dismissing a claim similar to the one urged here, "there is no

10. The Commonwealth Court has held that it has jurisdiction to review the administrative decisions of the Administrator pursuant to section 403 of the Appellate Court Jurisdiction Act. *Gillette v. Redinger*, 34 Pa.Cmwlth. 469, 383 A.2d 1295 (1977).

usurpation of judicial authority here because not only are the petitioners afforded a judicial review of the determination of the panel, they are entitled to a trial de novo in a court." *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 448 (1978). *Accord, Paro v. Longwood Hospital,* 369 N.E.2d 985 (Mass.1977); *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977).

The restrictive view advanced by appellants also ignores the power of legislature to completely extinguish a cause of action or create a new one. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975); *Jackman v. Rosenbaum Co.,* 263 Pa. 158, 106 A. 238 (1919); aff'd. 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922). To argue that the legislature is constitutionally prohibited from providing an administrative remedy as a precondition to access to the courts because the action has been previously entertained initially in the courts and yet concede the power of the legislature to completely extinguish the remedy would be clearly untenable. Moreover, the rationale urged by appellants would create, "the stagnation of the law in the face of changing societal conditions" to which this Court has previously referred. *Singer v. Sheppard, supra ; Jackman v. Rosenbaum, supra. See also Munn v. Illinois,* 94 U.S. 113, 24 L.Ed. 77 (1876).

Appellants reliance upon our decision in *Commonwealth ex rel. Banks v. Cain,* 345 Pa. 581, 28 A.2d 897 (1942) in this context is misplaced. They point to the language in that decision as supportive of their position wherein this Court stated that there would be an infringement upon judicial power to extend parole beyond the maximum term imposed or the discharge of parolee prior to the expiration of the parole period. There we were concerned with the finality of a judicial order entered in accordance with the law at the time it was pronounced. *See Com. v. Sutley,* 474 Pa. 256, 378 A.2d 780 (1977). Here we are concerned with the legislature's power to create new remedies and to modify existing modes of redress to facilitate recovery for future rights.

■ We are therefore satisfied that a requirement that the claimant must first seek redress through a statutorily created administrative remedy before seeking relief in the courts does not usurp the powers vested in the courts under Article V where that enactment provides for an appeal to the courts *de novo.* As a corollary it also follows that the powers vested in the chief executive officer to implement the administrative process does not represent an improper delegation of judicial functions to a non-judicial officer.

■ Appellants claim that the statute and procedures issued thereunder deny procedural due process in that the panel's health care provider members have a constitutionally impermissible interest in the outcome of the proceedings, in that the health care providers on the panel will substitute their own professional experience for sworn testimony in deciding the case, in that the Administrator has unfettered discretion in choosing panel members and in choosing which of the attorney members will serve as chairman, and in that the panel chairman will deliberate with other panel members after instructing them on the law. The panel, according to legislative command, is to be structured as follows: Each arbitration panel shall be composed of seven members, including two health care providers, two attorneys, one of whom shall be designated as chairman by the Administrator, who shall determine questions of law and three lay persons who are not health care providers nor licensed to practice law. It is appellants contention that the inclusion of two health care providers on the panel of seven is violative of the principles enunciated in *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). In *Tumey,* the conflict of interest which was held to violate the due process right to an impartial decision-maker in a criminal case consisted of the fact that the mayor-judge was directly and substantially interested in the outcome of the case in that he recovered fees in the form of court costs which were assessable only against convicted defendants. In *Ward,* the constitutional defect in an Ohio statute autho-

rizing mayors to sit as judges in criminal traffic offense cases occurred where a major part of village income was derived from fines, costs and fees imposed in the mayor's court. Accordingly, the mayor, as chief executive officer of the municipality, had a direct and substantial interest in cases whose outcome affected the financial concerns of an organization for which he was officially responsible. In *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the United States Supreme Court extended the due process impartiality analysis to a case unconnected with the criminal law. In that case the Court held procedural due process was violated by a decision of the Alabama State Board of Optometry revoking the license of nearly half of all practicing optometrists in the State (those employed by corporations); the Board of Optometry was composed *solely* of optometrists in private practice; and, thus, success in the Board's efforts would directly and substantially rebound to the personal benefit of the members of the Board. The *Gibson* case is distinguishable from the instant case in these very salient respects: 1) the arbitration panel is composed of a minority of health care providers; 2) the appellants challenge is to the facial validity of the entire arbitration scheme insofar as it invokes health care providers rather than to a particular abuse of quasi-judicial regulatory authority as in *Gibson* ; 3) the appellants have introduced no facts, other than the mere assertion that the inclusion of two individuals with the status of health care provider automatically taints the arbitration process, to show that the health care provider members of the panel are directly and substantially interested in the outcome of the arbitration process; 4) the content of the rules which will be applied by the panel are not, as in *Gibson,* decreed exclusively by persons pecuniarily interested in the health care industry, but are determined by the judge-made common law of tort in Pennsylvania; and 5) the legislature has not delegated to the arbitration panel a general legislative authority to fix governmental policy as in *Gibson,* but merely to apply the law of the Commonwealth to the facts of a particular case. We decline to follow appellants unwarranted analogy to *Gibson* to inval-

idate the inclusion of health care providers on the arbitration panel.

We further reject appellants' unsubstantiated assertion that health care providers will ignore the law and the facts in arriving at their collegial determination with other panel members. Absent evidence to the contrary, panel members are presumed to be persons of honesty and integrity. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *State ex rel. Strykowski v. Wilkie, supra,* 261 N.W.2d at 446. Equally as important, the two health care panel members cannot control the outcome of the panel's vote. The Act requires a majority vote of the full panel of seven members to decide all matters. Other cases cited by appellants are inappropriate since they assume, contrary to fact, that the panel is a judge or a jury rather than a quasi-judicial administrative board with fact-finding powers. *See e. g., Commonwealth v. Moore*, 443 Pa. 364, 279 A.2d 179 (1971).

Similarly unfounded are appellants challenges to the Administrator's discretion in appointing the panel and in designating the attorney who will serve as chairman. The arbitration panel is not a jury and therefore not subject to the strictures applicable to the composition of that body. *See, Thiel v. Southern Pacific Company*, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946). This Court has pointedly stated that the essential elements of procedural due process are " 'notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause.' " *Conestoga National Bank of Lancaster v. Patterson*, 442 Pa. 289, 295, 275 A.2d 6, 9 (1971). With respect to tribunals of the nature of which we spoke in that case, we indicated that the proceedings need not be attended by "the full panoply of trial-type formalities." *Id.*, 442 Pa. at 299, 300, 275 A.2d at 11. Since the proceedings contemplated by the arbitration Act comply on their face with our standards for procedural due process in a non-jury proceeding, we cannot say that the limited discretion afforded the Administrator under the Act

in composing the panel, is either violative of that standard or not reasonably adopted to the exigencies involved in implementing a functioning medical malpractice arbitration system. There is no indication on the present record that the Administrator has abused his discretion in the formation of the arbitration panels nor that putative abuses of discretion would be unreviewable under prevailing Pennsylvania law. In any event, dissatisfied participants in medical malpractice arbitration proceedings are afforded a statutory right to a trial *de novo* on the claim submitted to the panel including trial by jury.

 Finally, contend that the chairman's deliberation with the panel, after ruling and instructing the members of the panel on the applicable law, infringes the right to procedural due process. Such a procedure is standard in our current compulsory arbitration system. We cannot say that the extension of this long accepted practice to an area of medical malpractice arbitration is clearly, palpably, and plainly violative of appellants due process right to an orderly proceeding adapted to the nature of the case before the panel. *Conestoga National Bank of Lancaster v. Patterson, supra*; *See, Singer v. Sheppard, supra*, 464 Pa. at 393, 346 A.2d 897.

Having rejected *in toto* appellants multifarious constitutional challenges to the provisions of the Malpractice Act, we must affirm that part of the opinion of the Court of Common Pleas of Philadelphia County rejecting appellants contentions and reverse that part of the opinion which invalidated section 510 of the Act. Accordingly, the decision of the court below is affirmed in part and reversed in part.

MANDERINO, J., notes his dissent.

LARSEN, J., filed a dissenting opinion.

ROBERTS, J., did not participate in the decision of this case.

LARSEN, Justice, dissenting.

I dissent.

## I.

The Medical Malpractice Act of 1976 is an unworkable mess and the Majority of this Court is perpetuating this sad condition. It is a piece of social legislation which has not achieved a single one of its purposes. One thousand two hundred and seventy cases (1,270)[1] have been filed with the administrator of the Act yet only two of the cases have been disposed of by trial by the seven person arbitration panel. This backlog is growing by leaps and bounds each year. The backlog will soon be greater, time wise, than any one of Pennsylvania's sixty-seven county court backlogs. The only thing this Act has successfully done is create a bureaucracy which impedes the resolution of disputes of its citizens. The poor citizens (both plaintiffs and defendants) must now undergo two lengthy trials, endure two court backlogs and pay double the expenses which are not uncommonly in the $20,000 to $30,000 range. Additionally, it is humanly impossible for one person (administrator) to manage, control and make all legal rulings on the pleadings of well over one thousand cases—hence the cases will not be disposed of. Lastly, as a practical matter, it is almost impossible to form an arbitration panel. Two health care providers (Doctors, etc.,) are required to sit on the arbitration panel and no doctor, worth his salt, will be able to devote the necessary two or three weeks plus serve on the panel. The legislature sincerely meant well when they created this Act; but it just hasn't worked out and yet, its burdens and unworkability will continue. As Mr. Justice Blackmun of the United States Supreme Court stated in a reference to an aspect of Pennsylvania Law, "The law is a ass—a idiot." *Estate of Wilson v. Aiken Industries, Inc.,* —— U.S. ——, 99 S.Ct. 216, 58 L.Ed.2d 191 (1978) (Blackmun, J., concurring in denial of *cert.*)

---

1. Forty-eight (48) cases in 1976; 422 in 1977; 800 in 1978 (as of August 31).

## II.

The Malpractice Act is unconstitutional for the following reasons:

A) Article I Section 6 of the Pennsylvania Constitution provides:

"Trial by jury shall be as heretofore, and the right thereof remain inviolate."

The Malpractice Act violates this section of the Pennsylvania Constitution in two respects: (1) as the Act provides that the arbitrators' decision shall be admissible as evidence in the "de novo" jury trial, a true de novo trial is not provided; and (2) even if a de novo jury trial is provided, the requirement of first trying one's case completely before the arbitration panel is such a burden as to impose "onerous conditions, restrictions or regulations which would make the right [to a jury trial] practically unavailable." *Smith Case*, 381 Pa. 223, 112 A.2d 625 (1955).

B) The inclusion of two health care providers (doctors, hospitals, etc.) on the seven member panel denies a plaintiff a constitutionally provided fair trial. The health care providers' contributions to the 'fund' are determined by the size of awards granted to plaintiffs. It is like the fox deciding if the chicken should be reimbursed for the fox having raided the chicken coop. See *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Commonwealth v. Colon,* 223 Pa.Super. 202, 299 A.2d 326 (1972).

C) Plaintiffs are also denied procedural due process because the chairperson of the panel (selected by administrator) retires to deliberate with the other panel members after having instructed the other panel members of the law applicable to the case being decided. It would be the same as permitting a trial judge, after instructing a jury as to the law, to then become the "thirteenth" juror to participate in the jury deliberations. *See Argo v. Goodstein,* 424 Pa. 612, 228 A.2d 195 (1967) wherein we reiterated " 'We *strongly condemn* any intrusion by a Judge into the jury room during the jury's deliberations . . . ' ".

D) Article I Section 11 of the Pennsylvania Constitution provides: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or *delay.*" (Emphasis added)

The Medical Malpractice Act violates this provision of the Pennsylvania Constitution because the Act creates an intolerable delay by requiring the litigants to endure two *long* backlogs and two full blown trials.