Noel J. Gillette, M.D., Petitioner *v.* Kenneth J. Redinger and Nancy E. Redinger, Administrators of the Estate of Keith Alan Redinger, Deceased and Forbes Health System, a corporation trading as Columbia Health Center and Geoffrey M. Hosta, M.D. & Associates and Kirk Redinger, Respondents.

Argued November 2, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers and Blatt.

*David B. Fawcett, Jr.,* with him *Richard S. Dorfzaun,* and *Dickie, McCamey & Chilcote,* for petitioner.

*Clyde T. MacVay,* with him *Evans, Ivory & Evans,* for respondent, Kirk Redinger.

*John W. Jordan, IV,* with him *Thomson, Rhodes & Grigsby,* for respondent, Geoffrey M. Hosta, M.D. & Associates.

*Gerald Gornish,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for respondent, Administrator for Arbitration Panels for Health Care.

Opinion by Judge Crumlish, Jr., March 28, 1978:

This is an appeal by Noel J. Gillette, M.D., from the decision of the Administrator for Arbitration

Panels for Health Care sustaining preliminary objections of Kenneth J. and Nancy E. Redinger (Plaintiffs) to Gillette's complaint to join an additional defendant in an action which Plaintiffs had instituted against Gillette under Pennsylvania's new Health Care Services Malpractice Act[1] (Act).

This case is one of first impression, bringing before us the novel question of the jurisdiction of the Arbitration Panels for Health Care and the intended scope of the Act.

The facts giving rise to the litigation are tragic. On the evening of January 18, 1976, Keith Alan Redinger was struck on the side of the head by a snowball thrown by his brother, Kirk. Early the next morning he awoke with head pain and began vomiting. His parents, the Plaintiffs herein, rushed him to the emergency room at Columbia Health Center in Pittsburgh. His condition deteriorated and that evening he lapsed into unconsciousness and later his vital signs ceased. Respiratory resuscitation, cardiac massage and emergency surgery all proved fruitless and the patient was pronounced dead.

In August, 1976, his parents commenced proceedings before the Arbitration Panels for Health Care against Gillette, Forbes Health System, the corporation which operated Columbia Health Center, and Geoffrey M. Hosta, M.D. & Associates, the professional association which allegedly staffed the operating and emergency room facilities at Columbia. On November 1, 1976, Gillette filed a Complaint to Join Additional Defendant Kirk Redinger, alleging that Kirk's act of throwing the snowball was the sole cause of his brother's death. Preliminary objections to that complaint were filed and sustained by the Adminis-

---

[1] Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §1301.101 et seq.

trator. Following the filing of a motion for reconsideration, the Administrator again sustained the objections on the ground that joinder of Kirk was improper because the Arbitration Panel did not have jurisdiction over a nonhealth care provider whose actions are not related to the furnishing of medical services. Defendant Gillette disagreed and brought the dispute to us for resolution.

The purpose of the Health Care Services Malpractice Act is set forth in Section 102, 40 P.S. §1301.102, as follows:

> It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation.

The term "health care provider" is defined by Section 103, 40 P.S. §1301.103, to mean

> a primary health center or a person, corporation, facility institution or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, an osteopathic physician or surgeon, a podiatrist, hospital, nursing home, and except as to section 701(a), an officer, employee or agent of any of them acting in the course and scope of his employment.

The Act further provides for the creation of the office of Administrator for Arbitration Panels for Health Care and directs the Administrator to establish for each claim a separate seven-man panel, composed of two health care providers, two attorneys, and three persons who are not health care providers or licensed

to practice law.[2] The panels' jurisdiction is established by Section 309, 40 P.S. §1301.309:

> The arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a non-health care provider who is made a party defendant with a health care provider.

The Act uses language identical to that of the first sentence of Section 309 when it describes the procedure for the filing of claims in Section 401, 40 P.S. §1301.401:

> A patient or his representative, having a claim for loss or damage resulting from the furnishing of medical services which were or which should have been provided, shall file with the administrator a complaint. . . .

Finally, Section 502 of the Act, 40 P.S. §1301.502, which is the focal point of this appeal, governs joinder of additional parties, providing:

> At any time up to the selection of the panel members, a party may join any additional party who may be necessary and proper to a just determination of the claim. The arbitration panel shall have jurisdiction over such additional parties whether they be health care providers or nonhealth care providers.

Dr. Gillette argues that Section 502, by permitting joinder of *any* additional party who may be necessary and proper to a just determination of the claim, specifically permits the joinder of a person who, like

---

[2] Sections 301 and 308 of the Act, 40 P.S. §§1301.301, 1301.308.

Kirk Redinger, is alleged to have caused the injury giving rise to the need for the medical services later alleged to have been negligently rendered. The fact that Kirk is not a health care provider as defined by Section 103 is irrelevant, argues Gillette, in light of the specific language of both Sections 502 and 309 which confers upon the panel jurisdiction over properly joined "nonhealth care providers." The Redingers and the Administrator counter that the Act's statement of purpose makes clear that it was created for the narrow purpose of providing a method of adjudication of claims of medical malpractice, and not for claims based on other alleged tortious conduct; they argue that the term "nonhealth care provider" does not refer to all persons not included in the definition of "health care provider" in Section 103, but rather was intended to encompass those persons who, like manufacturers of drugs or medical instruments, although not health care providers as defined by Section 103, are kindred to health care providers. They insist that a snowball thrower clearly is not within that category, and hence is not included as a proper subject for jurisdictional purposes. We agree.

Our close examination of the Act, considering the provisions of the Statutory Construction Act of 1972, 1 Pa. C.S. §1501 et seq.,[3] leads to the inevitable con-

---

[3] Sections 1921 and 1922 of that Act read, in part, as follows:

§1921. Legislative intent controls

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

clusion that the legislature never intended the Arbitration Panels for Health Care to pass upon questions other than that of medical malpractice. While it is true that Section 502 permits joinder of "any additional party who may be necessary and proper to a just determination of the claim," still the "claim" intended to be justly determined is one "for loss or damages resulting from the furnishing of medical services which were or which should have been provided." Sections 309 and 401. To us, it is clear that the joinder of Kirk Redinger is not necessary to determine whether one or more of the defendants was guilty of medical malpractice. The only issue before the panel is that of the alleged failure by the defendants to properly treat an existing injury. The question of how the injury was caused may, and probably would, be germane to that issue, and the person who allegedly caused the injury could properly be called to testify;

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

§1922. Presumptions in ascertaining legislative intent

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

but the question of that person's possible liability is irrelevant. Were we to hold to the contrary, the Arbitration Panel would have jurisdiction over virtually every type of tort claim which contributes, however remotely, to an injury which is also partly caused or aggravated by an act of malpractice. We may not assume that the legislature attempted to place so impossible a burden upon the Arbitration Panels in the absence of clear language in the Act indicating its intention to do so.

Accordingly, we

### ORDER

AND Now, this 28th day of March, 1978, the decision of the Administrator for Arbitration Panels for Health Care sustaining the preliminary objections to Defendant Gillette's complaint to join additional defendant Kirk Redinger is affirmed.