Charles H. MORRISON, as Administrator
of the Estate of Charles O. Morrison,
Deceased, Thelma L. Morrison, Widow,
Plaintiffs,

v.

THERM–O–RITE PRODUCTS
CORPORATION, Defendant.

Civ. A. No. 79–51.

United States District Court,
M. D. Pennsylvania.

April 24, 1979.

Milton Bernstein, George W. Gekas, Harrisburg, Pa., for plaintiffs.

Bernard Buzgon, Harry Read, Jr., Lebanon, Pa., for defendant.

MEMORANDUM

HERMAN, District Judge.

Plaintiffs, Charles H. Morrison as Administrator of the Estate of Charles O. Morrison, deceased and Thelma L. Morrison, widow, filed this diversity action on January

11, 1979 under Pennsylvania's Wrongful Death and Survival statutes. The complaint sets forth causes of action in negligence, breach of warranties, misrepresentation, and strict liability against the Defendant, Therm-O-Rite Products Corporation. Before filing this suit, the same Plaintiffs on January 5, 1979 filed a notice of complaint before the Pennsylvania Arbitration Panel for Health Care alleging that certain Defendants: the Polyclinic Medical Center; Terry Hollinger, R.N.; Nancy K. McClure, R.N.; William B. Iams, M.D.; and Cardiovascular & Thoracic Associates, Inc.; were liable for medical malpractice. The Defendant, Therm-O-Rite has filed a motion to dismiss the instant suit on the basis that the Plaintiff has failed to state a claim upon which relief can be granted, that this Court lacks jurisdiction pursuant to the Pennsylvania Health Care Services Malpractice Act, and that the Plaintiff has failed to join an indispensable party. The motion to dismiss will be granted as the complaint fails to state a claim under the law of Pennsylvania.

The background facts of this case are that Charles O. Morrison underwent surgery at the Polyclinic Medical Center on September 22, 1977. The medical staff of the Polyclinic Medical Center used the Defendants' Hypo-Hyper Thermia thermal equipment to treat Mr. Morrison following his surgery. The use of Defendants' thermal equipment resulted in Mr. Morrison receiving third-degree burns over a substantial area of his body and as a result of these injuries he died on January 17, 1978. In the complaint, the Plaintiffs state that the thermal equipment was used as an integral part of Mr. Morrison's surgical recovery. Since the filing of this action, Therm-O-Rite has been joined as an additional defendant in the action brought by the Plaintiffs before the Arbitration Panel.

Since this is a diversity action, we are obligated to apply the substantive law of the Commonwealth of Pennsylvania. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Medical malpractice claims in Pennsylvania are governed by statute, the "Health Care Services Malpractice Act", 40 P.S. § 1301.101 *et seq.* Under the Act, the arbitration panel has original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services. 40 P.S. § 1301.309. The arbitration panel also has original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider. The Act also provides that a party may join any additional party who may be necessary and proper to a just determination of the claim and that the arbitration panel shall have jurisdiction over such additional parties. 40 P.S. § 1301.502. Under the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. 2255(d), a plaintiff can "recover from an additional defendant found liable to him alone or jointly with the defendant as though such additional defendant had been joined as a defendant and duly served and the initial pleading of the plaintiff had averred such liability". In short, pursuant to this rule, a plaintiff may recover directly from an additional defendant if the facts proven warrant such recovery.

The first issue that we must decide is whether the defendant manufacturer of thermal equipment is within the class of "nonhealth care providers" established by the Pennsylvania's Health Care Services Malpractice Act. Unfortunately, the Act provides little guidance on what persons or entitles fall within this class. It fails to define "nonhealth care providers" in the definition section and essentially leaves the courts with the task of developing the contours of this class. The Act does provide a definition of "health care provider" as "a primary health center or a person, corporation, facility institution or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, an osteopathic physician or surgeon, a podiatrist, hospital, nursing home, . . . an officer, employee or agent of any of them acting in the course and scope of his employment." 40 P.S. § 1301.103. While one construction of

the class "nonhealth care providers" would be any other defendant not specifically included within the definition of "health care provider", the Pennsylvania courts have found the class to not be this all inclusive.

In the leading decision of *Gillette v. Redinger*, 34 Pa.Cmwlth. 173, 383 A.2d 1295 (1978), the Commonwealth Court of Pennsylvania held that "nonhealth care providers" did not mean all persons or entities other than "health care providers", but rather, that it was meant to include only persons or entities that are closely associated with the rendering of medical care. The case came before the court on an appeal by a defendant-doctor from a decision of the Administrator of the Act which sustained preliminary objections to the doctor's attempt to join an additional defendant.

The facts giving rise to the litigation were that Keath Redinger was struck on the side of the head with a snowball thrown by his brother. He was rushed to the emergency room by his parents at the Columbia Health Center in Pittsburgh. However, his condition deteriorated and he was later pronounced dead. His parents subsequently commenced an action before the arbitration panel against a number of health care providers. One of the defendants then attempted to join the decedent's brother as an additional defendant alleging that the brother's act of throwing the snowball was the sole cause of death. The administrator ruled that joinder of the brother was improper because the panel did not have jurisdiction over a nonhealth care provider whose actions were not related to the furnishing of medical services. 383 A.2d at 1297.

The court found that "nonhealth care providers" was *"intended to encompass those persons who, like manufacturers of drugs or medical instruments,* although not health care providers . . . *are kindred to health care providers." Id.* at 1298 (emphasis added). Therefore, it held that the snowball thrower was not included as a proper subject for jurisdictional purposes. It reasoned that the legislature only intended to have the panel pass upon questions of

medical malpractice and that the snowball thrower's possible liability was irrelevant to the determination of whether the health care providers were guilty of malpractice. Based on the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501 *et seq.,* the court opined that the panel did not have jurisdiction over any "type of tort claim which contributes, however, remotely, to an injury which is also partly caused or aggravated by an act of malpractice." *Id.*

One federal decision by Judge McGlynn, *Dings v. Mosch,* Civil No. 77–3291, (E.D.Pa., Jan. 31, 1978), also provides guidance on how the phrase "nonhealth care provider" should be construed. The diversity action involved claims against two health care providers for medical malpractice and one against Geigy Pharmaceuticals based upon negligence and the doctrine of strict liability. Judge McGlynn held that "in the context of the Act, the phrase "nonhealth care provider" is clearly broad enough to include manufacturers and sellers of drugs compounded and sold for use by health care providers in the treatment of patients. Here, the malpractice claims against the health care providers, . . . arise from the administration of drugs manufactured and supplied by the codefendant Geigy. Under these circumstances, the Arbitration Panel has original exclusive jurisdiction." *Id.* at 2.

In applying this case law to the facts of the instant case, we think it is clear that Therm-O-Rite fits within the class of "nonhealth care providers". As previously noted, the thermal equipment was designed for and used as an integral part of surgical recovery and thus, this Defendant was intimately related to the process of furnishing medical services. Therm-O-Rite is kindred to health care providers and it falls within the Commonwealth Court's definition of "nonhealth care providers" as it is a manufacturer of medical equipment that is used as an integral part in the furnishing of medical services. Also, it should be noted that the Superior Court of Pennsylvania recently approvingly restated the language of *Gillette* that "nonhealth care providers"

refers to persons who, like manufacturers of drugs and medical instruments, are kindred to health care providers. *Staub v. Southwest Butler County School District,* No. 500 April Term 1978 (filed Feb. 15, 1979).

■ Also, Therm-O-Rite clearly falls within the scope of "nonhealth care providers" as defined by Judge McGlynn in *Dings.* We agree that in the context of the Act, the legislature obviously intended certain persons or entities to fall within the class of "nonhealth care providers" as it provided that the panel should have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant, 40 P.S. 1309.309. Under the Statutory Construction Act, 1 Pa.C.S. § 1922, it is presumed that the legislature does not intend an absurd result and that it intends an entire statute to be effective. We think the Act's coverage includes manufacturers and sellers of drugs compounded and sold for use by health care providers in the treatment of patients, and in this case the manufacturer of medical equipment that was used as an integral part of a patient's treatment. If these groups were not included, the provisions of the Act concerning "nonhealth care providers" would simply have no meaning.

■ We next turn to the question of whether the panel has exclusive jurisdiction over this "nonhealth care provider". We find that it does. The Act provides that the panel has original and exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider. 40 P.S. 1301.309. Therefore, if the Plaintiffs in the state action would have made Therm-O-Rite a defendant there, instead of proceeding with this action, the panel's jurisdiction over Therm-O-Rite would have been clearly exclusive. Therm-O-Rite, as noted above, was joined in the state proceeding as an additional party defendant. Under 40 P.S. 1301.502, the panel is also given jurisdiction over any additional parties who are joined, whether they be

health care providers or nonhealth care providers, as long as they may be necessary and proper to a just determination of the claim. Therefore, there is no question that the panel has jurisdiction over Therm-O-Rite, the only question is whether the jurisdiction is exclusive.

Our reading of the Act requires us to hold that the panel has exclusive and original jurisdiction over Therm-O-Rite, as any other interpretation would be an anomaly. A number of reasons support our conclusion. First, under the Pennsylvania Rules of Civil Procedure, an additional party can be held solely liable to a plaintiff. Pa.C.R.P. No. 2252; *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971). Pursuant to the regulations adopted by the administrator, the Pennsylvania Rules of Civil Procedure govern under the Act, 37 Pa. Code 171.11, unless specifically stated otherwise. Thus it appears that Therm-O-Rite could be held solely liable to the Plaintiffs in the arbitration proceeding.

Second, as construed by the Commonwealth Court in *Gillette,* the jurisdiction of the panel pursuant to the joinder section is identical with that provided under the jurisdiction section, 40 P.S. 1301.309. The Court in *Gillette* implied that the panel could hear and decide any claim asserted against a "nonhealth care provider" who was kindred to a health care provider. Third, we note that under the powers and duties section of the Act, 40 P.S. 1301.508(a), the panel is authorized and empowered to "make determinations as to liability and award of damages", without any noted limitations.

Finally, it must be pointed out that the state action and this action concern the identical issues. In the state proceeding the Defendants are charged with improper use of the medical equipment while in this proceeding the wrong is alleged to be with the equipment itself. If both actions were permitted to proceed, the possibility of inconsistent verdicts of course would be present. We do not believe Pennsylvania law provides for two separate suits for the same tortious act which would lead to possible inconsistent verdicts, a waste of judicial

resources, and cause a procedural quagmire. Hence, like Judge McGlynn, we find that the panel has original exclusive jurisdiction of this action.

 Since the panel has such jurisdiction and as we are bound to follow the state substantive law in this diversity action, this case must be dismissed. As was stated in *Marquez v. Hahnemann Medical College and Hospital,* 435 F.Supp. 972 (E.D.Pa. 1976), we cannot proceed with this action in which the sole source of the Plaintiff's claim is state law, when the cause of action is temporarily barred in the state court by a compulsory arbitration statute. *Id.* at 973. *See also Van Horn v. State Farm Mutual Automobile Insurance Co.,* 283 F.Supp. 260 (E.D.Mich.1966). Until the arbitration proceeding has been completed, the complaint fails to state a claim under the law of Pennsylvania and thus must be dismissed. *Botwin v. Loewenberg,* Civil No. 78–2305 (E.D.Pa., Jan. 19, 1979) (Judge Fullam); *Flotemersch v. Bedford County General Hospital,* 69 F.R.D. 556 (E.D.Tenn.1975).

We also note that this case is different in many respects from *Gillette* upon which the Plaintiffs rely. *Gillette* dealt with the joinder of an additional defendant who allegedly committed a separate, remote, and unrelated tort from that of the furnishing of medical services. Unlike the alleged acts of malpractice and the throwing of the snowball, the wrong in the present case concerns the same event, the use of the thermal equipment. Like in *Dings,* the claims against the health care providers arise from the use of the product manufactured and supplied by the Defendant. Only by joining all of these claims in one proceeding will the purpose of the Act be fulfilled.

In sum, we hold that the arbitration panel has the exclusive jurisdiction to hear and decide this claim against Therm-O-Rite, a "nonhealth care provider" that is kindred to "health care providers" as defined by the Act. The motion to dismiss will be granted.

An appropriate order will be entered.