Geisinger Medical Center, Petitioner *v.* Frederick L. Fisher, Administrator of the Estate of Rick L. Fisher, Deceased, Alexander Ewing & Associates and PPG Industries, Inc., Respondents.

Argued March 12, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MACPHAIL did not participate.

*Christian S. Erb, Jr., Metzger, Wickersham, Knauss & Erb,* for petitioner.

*Richard C. Angino,* with him *Benjamin & Angino, P.C.,* for Frederick L. Fisher, respondent.

*Richard A. Gray, Mitchell & Mitchell,* for Alexander Ewing and Associates, respondent.

*James K. Thomas, II,* with him *R. Burke McLemore, Jr.,* of *Thomas & Thomas,* for PPG Industries, Inc., respondents.

OPINION BY JUDGE CRAIG, April 17, 1980:

This is an appeal by Geisinger Medical Center (Geisinger) from the decision of the Administrator for Arbitration Panels for Health Care sustaining preliminary objections of Alexander Ewing & Associates (Ewing) and PPG Industries, Inc. (PPG) to Geisinger's complaint to join them as additional defendants in a medical malpractice action filed by Frederick Fisher, administrator of the estate of Rick Fisher (plaintiff) against Geisinger under the Health Care Services Malpractice Act.[1]

---

[1] Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.101 et seq.

Plaintiff originally filed a complaint with the arbitration panel on February 23, 1978 alleging that decedent's death was a direct result of Geisinger's negligence.

Decedent, admitted to the Geisinger Center on March 27, 1977 complaining of hallucinations, sucidal thoughts, and demonic possession, died a few hours later as a result of injuries suffered when he plunged through a second floor window at the Geisinger Center. Plaintiff's complaint alleges that Geisinger's failure to supervise and restrain decedent and to guard the windows, on a floor which was specifically designed to treat psychiatric patients, was the proximate cause of decedent's death and constituted the negligent delivery of medical services.

On June 21, 1978, Geisinger petitioned for permission to join Ewing, the architectural firm as to the center's specially-designed second floor mental health facility, as an additional defendant before the arbitration panel. On January 23, 1979, Geisinger further petitioned to join PPG as an additional defendant, alleging that, as manufacturer of the glass used in the center's windows, advertising that glass as designed to prevent egress and ideal for protective windows in mental health institutions, PPG had either breached expressed or implied warranties, or manufactured a defective product and, therefore, PPG was liable over to Geisinger for indemnity or contribution.

On May 16, 1979, on preliminary objections from PPG, the administrator transferred Geisinger's claims against both additional defendants to the Common Pleas Court of Montour County, and specifically ordered the plaintiff's case against Geisinger remain before the arbitration panel.[2] On June 4, 1979, the ad-

---

[2] On April 25, 1979, at the order of the administrator of arbitration panels Geisinger offered a petition to transfer the action to the appropriate court of common pleas.

ministrator amended the May 16 order to certify the question for interlocutory appeal.

In transferring Geisinger's claims against the additional defendants, the administrator held that neither PPG nor Ewing were health care providers as defined by the Act, nor were they nonhealth care providers subject to joinder under Section 502 of the Act, 40 P.S. §1301.502. Geisinger appeals from that determination, and requests either that: (1) Geisinger be allowed to join PPG and Ewing as additional defendants to the action before the arbitration panel, or (2) that the entire case, including plaintiff's original complaint before the arbitration panel, be transferred to the appropriate court of common pleas.

Section 309 of the Act, 40 P.S. §1301.309, provides the arbitration panel with original exclusive jurisdiction over claims brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided and any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider.

Section 502 provides that a party may join any additional party, health care provider or nonhealth care provider, who may be necessary and proper to a just determination of the claim.

In *Gillette v. Redinger*, 34 Pa. Commonwealth Ct. 469, 383 A.2d 1295 (1978), this court first addressed the term "nonhealth care providers", and determined that the term did not encompass all persons not included in the definition of "health care provider."

In light of the statutory provisions and considering the legislative intent and purpose of the act, Judge CRUMLISH stated in *Gillette, supra,* that:

> While it is true that Section 502 permits joinder of 'any additional party who may be necessary and proper to a just determination of the claim,'

> still the 'claim' intended to be justly determined is one 'for loss or damages resulting from the furnishing of medical services which were or which should have been provided.' Sections 309 and 401.

34 Pa. Commonwealth Ct. at 475, 383 A.2d at 1298.
The proper issue before the arbitration panel in this case is the alleged negligence of Geisinger in failing to supervise and properly restrain a person with known suicidal tendencies. The supervision of such a person is related intimately to the "furnishing of medical services'' and is thus a proper matter for the panel under 40 P.S. §1301.309. *See Herr v. St. Francis Hospital of New Castle,* 9 Pa. D. & C. 3d 610 (1978).

Joinder of Ewing and PPG as additional defendants is not necessary to determine whether Geisinger was guilty of medical malpractice.

Further, neither PPG nor Ewing are nonhealth care providers subject to joinder under the Act. Geisinger contends that, because PPG and Ewing offered and provided their respective products and services specifically for use in a mental health facility, they were therefore providing services ancillary to the rendering of health care and are the kind of nonhealth care providers who are subject to joinder under the Act.

However, the arbitration panel's jurisdiction is limited to claims of medical malpractice. The expertise of the arbitration panel, which requires appointment of two health care providers, relates to medical liability, not products liability. The purpose of the Act is to provide patients or their representatives with a forum in which to resolve medical malpractice claims arising out of torts or breaches by health care providers, not alleged tortfeasor's claims for contribution.

Ewing and PPG are not entities closely associated with the rendering of medical care; they are not "those persons who, like manufacturers of drugs or medical instruments, although not health care providers as defined by Section 103, are kindred to health care providers." *Gillette, supra,* 34 Pa. Commonwealth Ct. 474, 383 A.2d at 1298.[3]

Although our decision may result in multiple litigation for Geisinger, if it is found liable by the arbitration panel and seeks indemnification or contribution from Ewing and PPG, we also decline to transfer the entire action to the court of common pleas. Plaintiffs chose the forum of the arbitration panel by electing to seek recovery from defendant Geisinger, and the panel has exclusive original jurisdiction over that claim for alleged malpractice.

It may be advisable however, as the court in *Taglieri v. Logansport Machine,* 6 Pa. D. & C. 3rd 716 (1978) suggested, for Geisinger to request a stay of the cause of action presently before the lower court, pending outcome of the arbitration panel's determination.

We affirm the order of the administrator for arbitration panels sustaining additional defendants' preliminary objections, transferring defendant Geisinger's action against additional defendants to the Montour County Court of Common Pleas, and refusing to transfer plaintiff's action from the arbitration panel.

[3] An example of a nonhealth care provider who rendered kindred services and was therefore deemed an appropriate party to be joined under Section 502 of the Act is found in *Morrison v. Thermo-O-Rite Products Corp,* 468 F. Supp. 1295 (M.D. Pa. 1979). There the district court held that Thermo-O-Rite, manufacturer of thermal equipment designed for and used as an integral part of medical treatment, was a nonhealth care provider, "intimately related to the process of furnishing medical services."

ORDER

AND Now, this 17th day of April, 1980, the decision of the Administrator for Arbitration Panels for Health Care dated May 16, 1979, transferring defendant Geisinger Medical Center's claims against both Alexander Ewing & Associates and PPG Industries, Inc. to the Montour County Court of Common Pleas, is affirmed.

Judge WILLIAMS, JR. dissents.