David H. Smith, Individually and as the Administrator of the Estate of Patricia Smith, Deceased, Petitioner v. Robert Linn, D.O., et al., Respondents.

Argued March 12, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MAC-PHAIL did not participate.

*Mitchell S. Pinsly*, with him, *Thomas B. Rutter*, for petitioner.

*M. Kelly Tillery*, with him, *Paul J. Senesky* of *Galfand, Berger, Senesky, Lurie & March*, and *Robert F. Rossiter*, of *Obermayer, Rebmann, Maxwell & Hippel*, for respondents.

OPINION BY JUDGE BLATT, May 22, 1980:

The petitioner, David H. Smith, appeals from a decision of the Administrator for Arbitration Panels for Health Care (Administrator) sustaining the preliminary objections of the two respondents herein, Robert Linn, D.O., and Lyle-Stuart, Inc., and transferring the case to the Court of Common Pleas of Montgomery County.

The petitioner instituted the action before the Arbitration Panels for Health Care (Panels) pursuant to

the Health Care Services Malpractice Act (Act), Act of October 15, 1975, P.L. 390, 40 P.S. §1301.101 *et seq.*, on his own behalf and as the administrator of the estate of his wife, Patricia Smith (decedent). He alleged that her death was caused by her adherence to a wantonly dangerous protein diet program espoused in a book entitled *The Last Chance Diet,* which was written by the respondent, Dr. Linn, an osteopathic surgeon licensed to practice in Pennsylvania, and published by the respondent, Lyle-Stuart, Inc. He also named as parties to the suit below the distributor of the liquid protein diet substance, the two manufacturers of the liquid protein, and the decedent's personal physician, Howard Rosenfeld, M.D., whom he charges as negligent in supervising the decedent's diet.[1]

The Administrator dismissed Dr. Linn for lack of jurisdiction on the bases that the decedent was not a "patient" of Dr. Linn and also that Dr. Linn was not a necessary additional party for the purposes of joinder. The Administrator also dismissed Lyle-Stuart, Inc. on the bases that the publisher did not provide medical services and was not a proper party under the Act. The sole issue before us, therefore, is whether or not the Administrator erred in concluding that the Panels were without jurisdiction over the two respondents herein, Dr. Linn and Lyle-Stuart, Inc.[2]

---

[1]The petitioner's procedural dilemma under the Health Care Services Malpractice Act is complicated by his suit against the same six parties in the Court of Common Pleas of Montgomery County. That court, on September 26, 1978, sustained the preliminary objections of decedent's personal physician, Dr. Rosenfeld, and of the publisher who is the respondent here, Lyle-Stuart, Inc., and dismissed the suit against them because of the pendency of the Panels' administrative action. However, the Administrator's order of April 11, 1979, which is at issue before us, returned Lyle-Stuart, Inc., to the suit in the Court of Common Pleas.

[2]By order of June 26, 1979, the Administrator also transferred to the Court of Common Pleas of Montgomery County the suit

The jurisdiction of the Panels is set forth in Section 309 of the Act, 40 P.S. §1301.309, which provides:

> The arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought by a *patient or his representative* for loss or damages resulting from the furnishing of medical services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider. (Emphasis added.)

Turning initially to the petitioner's characterization of the decedent as a patient of Dr. Linn, we note that the Act expressly limits the exclusive original jurisdiction of the Panels to actions arising out of the relationship between the health care provider and the patient. Such a relationship customarily requires an immediate connection between the health care provider and the patient and involves an actual or implied consent to diagnose and to be diagnosed or to treat and to be treated. Louiselle & Williams, *Medical Malpractice,* §8.02 (1977). *See Neill v. Gimbel Brothers, Inc.,* 330 Pa. 213, 199 A. 178 (1938); *Brown v. Moore,* 247 F.2d 711 (3d Cir. 1957).

The relationship between the decedent and Dr. Linn, as set forth in the complaint, appears to be only that the decedent purchased the book in January of 1977, that she relied on the book in adhering to the diet prescribed in the book, and that the medical problems which led to her death in July of 1977 were

---

against the distributor and the two manufacturers of the liquid protein. If we affirm the Administrator's order at issue in the present case, the only defendant before the Panels will be the decedent's personal physician, Dr. Rosenfeld, while the other five defendants presumably will be parties in the Court of Common Pleas.

a result of this protein diet. It is evident that her relation with Dr. Linn was not that of a patient to a health care provider, for the only communication between Dr. Linn and the decedent flowed wholly in one direction via the medium of the mass market in paperback books, and it did not involve consensual treatment or diagnosis. The relationship was therefore that of an anonymous reader to an author. While we do not conclude, of course, that the complaint fails to state a cause of action against Dr. Linn, we must conclude that the decedent was not a patient of Dr. Linn and that the Administrator was correct in determining that Dr. Linn could not directly be sued by the petitioner under Section 309 of the Act, 40 P.S. §1301.309.

The petitioner contends nevertheless that the Panels retain jurisdiction over Dr. Linn and Lyle-Stuart, Inc., as necessary additional parties to the suit before the Panels against the decedent's personal physician, Dr. Rosenfeld. Section 502 of the Act, 40 P.S. §1301.502, expressly provides for the joinder of additional necessary parties, and does not require that the claimant be a patient of the additional party:

> At any time up to the selection of the panel members, a party may join any additional party who may be necessary and proper to a just determination of the claim. The arbitration panel shall have jurisdiction over such additional parties whether they be *health care providers* or *nonhealth care providers*. (Emphasis added.)

The joinder of Dr. Linn as a necessary additional "health care provider" and of Lyle-Stuart, Inc., as a necessary additional "nonhealth care provider" is controlled by our decision in *Gillette v. Redinger*, 34 Pa. Commonwealth Ct. 469, 383 A.2d 1295 (1978), where we determined that the intent of the Act is to ad-

judicate malpractice claims by patients against health care providers, and that other alleged tort-feasors are necessary parties under Section 502 of the Act, 40 P.S. §1301.502, only if their joinder is necessary to determine if the conduct of the originally named health care provider constitutes medical malpractice. In *Gillette, supra,* 34 Pa. Commonwealth Ct. at 475, 383 A.2d 1298, we stated:

> [T]he legislature never intended the Arbitration Panels for Health Care to pass upon questions other than that of medical malpractice. While it is true that Section 502 permits joinder of 'any additional party who may be necessary and proper to a just determination of the claim,' still the 'claim' intended to be justly determined is one 'for loss or damages resulting from the furnishing of medical services which were or should have been provided.'... The only issue before the panel is that of the alleged failure by the defendants to properly treat an existing injury.

For the purposes of determining whether or not the joinder of Dr. Linn is necessary to determine the potential malpractice of Dr. Rosenfeld, we note that, according to the pleadings, the facts of the cause of action against the personal physician overlap the facts set forth in the complaint against Dr. Linn only in the following respect:

> Defendant Rosenfeld was guilty of carelessness and negligence in his care and treatment of Plaintiff's decedent, which carelessness and negligence caused or contributed to the cause of the death of Plaintiff's decedent, both generally and in the following particular respects:
>
> (a) in undertaking to manage and care for Plaintiff's decedent with respect to the diet program of Dr. Linn....

Assuming that the complaint is true, it appears that the position of Dr. Linn to Dr. Rosenfeld is similar to that of a tort-feasor who has put his victim in a position where the victim is injured by the negligence of a treating physician. In such a case, we have held that the joinder of the original tort-feasor is not necessary to determine the culpability of the physician for malpractice. *Gillette, supra.* Moreover, the fact that a court may ultimately determine in a wrongful death action that the damages are not capable of apportionment between the tort-feasor and the physician, thus moving the court to conclude that the tort-feasor is entirely liable for the damages of the wrongful death, is irrelevant to the issue of whether or not the physician committed malpractice. *Sunbury Community Hospital v. Kuster,* 49 Pa. Commonwealth Ct. 139, 410 A.2d 409 (1980). *See Embrey v. Borough of West Mifflin,* 257 Pa. Superior Ct. 168, 390 A.2d 765 (1978).[3] We believe, therefore, that the Panels' determination of whether or not Dr. Rosenfeld fulfilled his legal duty to the decedent in permitting and supervising her diet can be obtained without the joinder of Dr. Linn.

Turning to the Administrator's decision to sustain the preliminary objections of the publisher, Lyle-Stuart, Inc., we believe it to be self-evident that Lyle-Stuart, Inc., is not a necessary party for the purpose of determining the alleged malpractice of Dr. Rosenfeld. Furthermore, Lyle-Stuart, Inc., is not a "nonhealth care provider" as is required by Section 502 of the Act, 40 P.S. §1301.502, for the joinder of additional parties

---

[3]The apportionment of damages rule adopted in *Embrey,* 257 Pa. Superior Ct. at 176, 390 A.2d at 769, is that of Section 433A of the Restatement of Torts, Second, in subsection (1)(b) as follows:

(1) Damages for harm are to be apportioned among two or more causes where ...

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

who are outside the scope of the relationship between the health care provider and the patient. A "nonhealth care provider" must provide services "kindred to health care providers," *Gillette, supra,* 34 Pa. Commonwealth Ct. at 474, 383 A.2d at 1298, and book publishing for the popular market is not such a kindred service.

We conclude that the decedent was not a patient of Dr. Linn, and that neither Dr. Linn nor Lyle-Stuart, Inc., are necessary additional parties to the action against Dr. Rosenfeld, and that the administrator was correct in dismissing the suit against the respondents and transferring it to the Court of Common Pleas of Montgomery County.

ORDER

AND Now, this 22nd day of May, 1980, the order of the Administrator for Arbitration Panels for Health Care, entered April 11, 1979, sustaining the preliminary objections of Robert Linn, D.O. and Lyle-Stuart, Inc. is hereby affirmed.