Willie and Maria KIMBROUGH

v.

HOLIDAY INN.

Willie and Maria KIMBROUGH

v.

HOLIDAY INN OF LIONVILLE, INC.
and Holiday Inn of Lionville.

Civ. A. Nos. 78–634, 78–1369.

United States District Court,
E. D. Pennsylvania.

July 31, 1979.

Joseph H. Foster and Richard A. Kolb, Philadelphia, Pa., for movant (defendant).

Elisa B. Vela, Dept. of Justice, Washington, D. C., for government—U. S. amicus curiae.

---

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this case, defendants present a challenge to an experimental program instituted by the Department of Justice to test the feasibility of compulsory arbitration in civil suits. Plaintiffs, husband and wife, brought this diversity action [1] seeking damages in an amount less than $50,000 for personal injuries allegedly suffered by the wife during an assault when she was a business visitor at defendants' hotel. Defendants demanded a jury trial as permitted by Fed.R.Civ.P. 38(b). Pursuant to Local Rule 49, however, the case was referred to arbitration. Defendants now move to prohibit arbitration and to vacate the order of referral.

Through the addition of Local Rule 49, this court adopted a compulsory, nonbinding arbitration system on February 1, 1978, for a trial period of one year.[2] It did so as part of a Department of Justice experiment,[3] the express purpose being to test a plan which will "broaden access for the American people to their justice system and to provide mechanisms that will permit the expeditious resolution of disputes at a reasonable cost." Statement of Attorney General Griffin B. Bell before the Senate Committee on the Judiciary, Subcommittee on Improvements in Judicial Machinery, April 14, 1978. Basically, this arbitration system provides that certain types of cases [4] with money damages of $50,000, or less shall be automatically referred to arbitration, an arbitration hearing held in 30 days in most cases, and an award entered. Unless a party demands a trial de novo within 20 days after the entry of the award, the arbitration panel's decision becomes a final, nonappealable judgment. To discourage frivolous appeals, Local Rule 49 imposes upon the party who demands a trial de novo and fails to obtain a more favorable judgment, exclusive of interest and costs, the amount of the arbitration fees and imposes upon the defendant interest on the award from the time it was filed.

Defendants contend that by making arbitration a mandatory prerequisite to jury trial, Local Rule 49 violates the parties right to a trial by jury, is inconsistent with the Federal Rules of Civil Procedure, and denies litigants equal protection of the laws.

## THE SEVENTH AMENDMENT CONTENTION

■ Defendants first argue that application of Local Rule 49 will violate their right to trial by jury as at common law, a right guaranteed by the Seventh Amendment and by 28 U.S.C. § 2072.[5] As early as 1897, the Supreme Court noted that the aim of the Seventh Amendment "is not to preserve mere matters of form and procedure, but substance of right." *Walker v. Southern Pacific Railroad,* 165 U.S. 593, 596, 17 S.Ct. 421, 422, 41 L.Ed. 837 (1897).[6] The high court has consistently held that:

---

1. Since the original complaint apparently misnamed the defendants, plaintiffs filed a new suit. The same issue is raised in both cases and for the purposes of the present discussion, they may be treated as one.

2. The one-year experimental period was extended by court order for six months. Another extension of six months has been proposed.

3. Three districts—the Eastern District of Pennsylvania, the District of Connecticut, and the Northern District of California—initiated model arbitration programs at the request of the Department of Justice. In order to test various aspects of the proposed arbitration legislation currently pending in Congress, each of these pilot plans had different requirements.

4. Griffin Bell in a statement before the Committee on the Judiciary concerning Arbitration on April 14, 1978, noted that cases selected for arbitration should (1) involve claims for money damages as opposed to equitable relief; (2) not exceed $50,000; and (3) present predominantly factual issues rather than complex legal questions. Prime examples of cases eligible for arbitration would be diversity cases involving tort and contract claims below $50,000.

5. See page 572 infra, for a discussion of 28 U.S.C. § 2072.

6. As interpreted by the court in *Walker,* substance of right requires that questions of fact be settled by a jury. 165 U.S. at 596, 17 S.Ct. at 422.

The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' . . . does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with. *Ex parte Peterson,* 253 U.S. 300, 309–310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920).

The Court's most recent pronouncements regarding changes in the common law right to trial by jury as possible Seventh Amendment violations have been concerned with the number of jurors required by the constitution. In *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), the Court held that a local rule providing that a jury trial shall consist of six persons does not violate the substance of the Seventh Amendment, the requirements of 28 U.S.C. § 2072, or the Federal Rules of Civil Procedure.

*Colgrove* provides several clues regarding Seventh Amendment substantive rights as contrasted with procedural changes.[7] The Court interpreted the Seventh Amendment language that the right of jury trial be preserved as protecting the right to jury trial for cases where it existed at common law rather than as preserving various incidents of trial by jury. *Id.* at 152–56, 93 S.Ct. at 2450–52. The *Colgrove* Court, following *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), where the constitutionality of a statute providing for six-member juries in certain criminal cases was upheld, found no difference between trials by juries of twelve and trials by juries of six which would affect the substance of the Seventh Amendment right. *Id.* at 158–60, 93 S.Ct. at 2453–54.

In *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), the Court had the opportunity to reevaluate its holding in *Williams v. Florida,* supra, when presented with the issue of whether a state criminal trial with a five-member jury deprives the defendant of the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments. There, the Court balanced harm to defendant in the reduction of jury size with the administrative benefit to the state and held:

> While we adhere to, and reaffirm our holding in *Williams v. Florida,* these studies, most of which have been made since *Williams* was decided in 1970, lead us to conclude that the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members. We readily admit that we do not pretend to discern a clear line be-

---

**7.** Many procedural changes in the right to jury trial at common law have withstood Seventh Amendment challenges. *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 652–54, 58 L.Ed.2d 552 (1979) (offensive use of collateral estoppel which forecloses litigation before a jury of factual issues already decided in an SEC action does not violate the Seventh Amendment); *Katchen v. Landy,* 382 U.S. 323, 336–40, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (no Seventh Amendment violation where bankruptcy court adjudicates equitable claims which have a collateral estoppel effect in a subsequent legal action); *Galloway v. United States,* 319 U.S. 372, 388–93, 63 S.Ct. 1077, 1086–88, 87 L.Ed. 1458 (1943) (a directed verdict does not infringe Seventh Amendment rights); *Gas-oline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 497–98, 51 S.Ct. 513, 513–14, 75 L.Ed. 1188 (1931) (where retrial limited to question of damages even though no practice existed at common law for setting aside a verdict in part, no Seventh Amendment problem exists); *Fidelity & Deposit Co. v. United States,* 187 U.S. 315, 319–21, 23 S.Ct. 120, 121–22, 47 L.Ed. 194 (1902) (summary judgment does not infringe upon the Seventh Amendment guarantees.)

For an excellent discussion of the historical Seventh Amendment test and its evolution see *In re: Japanese Electronic Products Antitrust Litigation,* 478 F.Supp. 889, 904–907, 934–942 (E.D.Pa., June 6, 1979).

tween six members and five. But the assembled data raise substantial doubt about the reliability and appropriate representation of panels smaller than six. Because of the fundamental importance of the jury trial to the American system of criminal justice, any further reduction that promotes inaccurate and possibly biased decisionmaking, that causes untoward differences in verdicts, and that prevents juries from truly representing their communities, attains constitutional significance. *Id.* at 239, 98 S.Ct. at 1038–39.

Although *Ballew* dealt with a criminal trial and the Sixth and Fourteenth Amendments, the Court's evaluation of the factors amounting to a change in the right to jury trial of constitutional proportions is equally applicable here. A change in the right to jury trial is substantive where there is a substantial likelihood that the outcome of the trial would be influenced by the change and where no significant advantage accrues to the government by virtue of the innovation. Cases dealing with arbitration as a prerequisite to jury trial hold that such a preliminary system to trial greatly aids the efficiency of the trial system yet does not influence the outcome of the final verdict for any individual.

The Supreme Courts of the United States and Pennsylvania have both held that a procedure for nonjudicial determination prior to jury trial does not constitute a Seventh Amendment violation. In *Capital Traction Company v. Hof,* 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899), Congress, acting as a legislative body for the District of Columbia, passed a statute providing for trial in civil cases of moderate amount before a justice of the peace with a jury of twelve or less, allowing either party the right to appeal, upon posting of security, to a court of record for a trial by jury. The Court found no Seventh Amendment violation in this system as long as the right to trial by jury was preserved through the appeal. In commenting that the Seventh Amendment sought to preserve the *right* to trial by jury and not trial by jury, the Court noted that "[i]t does not prescribe at what stage of an action a trial by jury must, if demanded, be had; or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it." *Id.* at 23, 19 S.Ct. at 589.[8]

The leading case upholding the constitutional validity of a compulsory arbitration system is the Pennsylvania Supreme Court's pronouncement in *Smith's Case,* 381 Pa. 223, 112 A.2d 625 (1955), appeal dismissed sub nom. *Smith v. Wissler,* 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1958).

In *Smith's Case,* a challenge based on the Pennsylvania Constitution, Article 1, § 6, which provides that trial by jury shall be as heretofore, and the right thereof remain inviolate,[9] was brought against a local rule of court authorizing compulsory arbitration pursuant to a Pennsylvania legislative enactment providing for such arbitration in

---

**8.** In holding that the "trial" by a justice of the peace did not meet Seventh Amendment jury trial standards, the *Hof* court described trial by jury as "a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts . . . and to set aside their verdict if in his opinion it is against the law or the evidence." 174 U.S. at 13–14, 19 S.Ct. at 585.

The *Colgrove* court interprets this twelve men jury requirement as a historical accident rather than a constitutional necessity. 413 U.S. at 163, 93 S.Ct. at 2456. None of the parties in the instant case have suggested that arbitration by itself is a trial by jury and it is clear from *Hof* that it could never be.

**9.** As noted long ago by the Court in *Hof,* in analyzing the Seventh Amendment, "the judicial decisions and the settled practice in the several States are entitled to great weight, inasmuch as the constitutions of all of them had secured the right of trial by jury in civil actions, by the words 'shall be preserved,' or 'shall be as heretofore,' or 'shall remain inviolate,' or 'shall be held sacred,' or by some equivalent expression." *Capital Traction Company v. Hof,* 174 U.S. 1, 22, 19 S.Ct. 580, 589, 43 L.Ed. 873 (1899). Additionally, very few federal cases exist on the subject of arbitration since there has never been a compulsory federal arbitration system, and the federal constitutional question never arose in state cases since the Seventh Amendment has not been held applicable to the states.

all cases involving claims less than $1000.[10] The court in *Smith's Case* construed the Pennsylvania constitutional mandate of trial by jury to be consistent with the U.S. Supreme Court's interpretation of the Seventh Amendment in *Hof*, and held that "[t]he only purpose of the constitutional provision is to secure the right of trial by jury before rights of person or property are *finally* determined. All that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable. 381 Pa. at 230–31, 112 A.2d at 629 (emphasis in original). The court also emphasized that the burden imposed on parties by compulsory arbitration was far outweighed by the benefits of a speedy, less expensive, and more efficient trial system. *Id.* at 229–30, 112 A.2d at 629.

While conceding that court-mandated arbitration is in general constitutional, defendants seize upon the exception noted in *Smith's Case* and claim that Local Rule 49 creates a burdensome, onerous condition to jury trials, i. e., since the arbitration limits are so high, $50,000, there must be a full scale trial at the arbitration level to protect the parties' interests.

Challenges strikingly similar to those presented by the defendants in the instant case were recently rejected by the Pennsylvania Supreme Court in *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978). *Parker* deals with a section of the Pennsylvania Health Care Services Malpractice Act, 40 P.S. § 1301.101

et seq. (Supp.1979–80), which requires compulsory arbitration prior to jury trial in malpractice cases where health care providers are defendants. In upholding the constitutionality of this provision, the court reaffirmed *Smith's Case* in emphasizing that arbitration as a condition precedent approaches unconstitutional proportions only when substantial restrictions are placed on the right to jury trial. *Parker* rejected defendants' contention that arbitration would penalize appeals since the statute provides for imposition of all costs of both arbitration and trial, including expert witness expenses on the losing party if the court finds that an appeal was arbitrary and capricious. 483 Pa. 106, 394 A.2d at 939. In *Parker*, it was also argued that malpractice cases are so complex and expensive to try that an arbitration system which would in effect require two trials is unduly burdensome. This position parallels the defendants' contention in the instant case that claims of $50,000 are so substantial as to necessitate two trials. The Pennsylvania Supreme Court rejected this duplicity argument by pointing out that the assumption of a need for a second trial to obtain a fair result is totally unsupported. 483 Pa. 106, 394 A.2d at 939. The purpose of arbitration is to provide a swift, fair, less expensive means of dispute-resolution and every indication is that appeals from arbitration awards should be minimal. Defendants in *Parker* and in the instant case have attempted to show through statistics that present performance of arbitration is unsuccessful.[11] I agree with the *Parker* court's

---

**10.** Since the time of *Smith's Case*, Pennsylvania has increased the jurisdictional amount of its arbitration system to $3,000, $5,000, and $10,000. These amendments have also been held constitutionally valid.

In light of the fact that the proposed arbitration legislation presently before Congress has set a high jurisdictional amount yet allowed individual districts flexibility in setting a lower ceiling, it is interesting to note that a similar situation was rejected by the court in *Smith's Case*. There the local rule provided for arbitration in cases less than $500 while the statute authorized arbitration in cases less than $1000. The Pennsylvania Supreme Court held this

local rule invalid as negating a unified statewide system of arbitration. 381 Pa. at 233–34, 112 A.2d at 631.

**11.** At the time of the submission of the defendants' motion, only five cases were tried to an arbitration award and of those one (20%) had been appealed. Since that time 103 arbitration hearings were held, 48 appeals were filed, 37 cases went to final judgment unappealed, and 18 cases are still pending final decision. Thus, for the period from February 1, 1978, to June 30, 1979, approximately 56.5% of the cases which went to arbitration were appealed. Perhaps a better indication of the effect of arbitration is that a great many cases are terminated

analysis in that deference should be given to the arbitration rule in according a reasonable time period to test the system's effectiveness. 483 Pa. 106, 394 A.2d at 940.

The conditions for appeal *de novo* do not outweigh the benefits of arbitration in providing an efficient alternative for dispute-resolution. The *Parker* court summed up the issue by remarking that:

> Where the reason for the postponement of the right results from the effort on the part of the state to achieve a compelling state interest and the procedure is reasonably designed to effectuate the desired objective, it cannot be said that there has been a constitutionally impermissible encroachment upon that right. The acceptance in this jurisdiction of arbitration as a viable, expeditious, alternative method of dispute-resolution is no longer subject to question. . . . Nor does the fact that the arbitration here is compulsory rather than voluntary, detract from its usefulness for this purpose. *Smith's Case*, supra. We are therefore satisfied that the precondition of compulsory arbitration in cases of this type does not present the type of 'onerous' restriction which we referred to in *Smith's Case*.

483 Pa. 106, 394 A.2d at 939–40.

The analysis used in *Parker* to reject Seventh Amendment and due process challenges has been consistently applied by courts to uphold statutes requiring submission of claims to medical malpractice review panels prior to jury trial. *Hines v. Elkhart General Hospital*, 465 F.Supp. 421 (N.D.Ind. 1979); *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977); *Carter v. Sparkman*, 335 So.2d 802 (Fla.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977); *Everett v. Goldman*, 359 So.2d 1256 (La.1978); *Attorney Gen. of Maryland v. Johnson*, 282 Md. 274, 385 A.2d 57 (1978); *Paro v. Longwood Hospital*, 369 N.E.2d 985 (Mass.1977); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977); *Cominskey v. Arlen*, 55 A.D.2d 304, 390 N.Y.S.2d 122 (2d Dep't 1976); *Halpern v. Gozan*, 85 Misc.2d 753, 381 N.Y.S.2d 744 (Sup.Ct. Queens County 1976); *State ex. rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434 (1978). This wealth of caselaw indicates the growing recognition that arbitration is a useful tool to promote greater efficiency in litigation and that pre-trial review in no way infringes upon constitutional rights of litigants.

Furthermore, arbitration provides a valuable service by promoting speedy and inexpensive dispute-resolution. Litigants have the opportunity to test the validity of their claims very shortly after they are filed. Certainly, this limits the time and expense of discovery prior to arbitration. In the normal course of trial without arbitration, voluminous resources can be expended in discovery which is of marginal advantage at trial. The pendency of arbitration forces counsel to focus their attention on the basic elements of the case. Aside from the ultimate award, if arbitration reveals that no claim exists, settlement will become a viable possibility. At the very least, arbitration helps counsel streamline their case and direct their additional discovery in profitable areas.

I conclude that the arbitration system created by Local Rule 49 does not impose conditions so burdensome or so onerous that it interferes with the rights guaranteed by the Seventh Amendment.

before arbitration, thus indicating that amicable settlement of claims may be encouraged by knowledge that an arbitration hearing is soon forthcoming. According to the statistics compiled from February 1, 1978, to June 30, 1979, 71.5% of cases eligible for arbitration after $50,000 certifications had been filed were terminated in that time period. Of the total eligible cases terminated, 83.3% were terminated prior to referral to arbitration.

Defendants argue that regardless of the statistical appeal rate, at least in some individual cases, Seventh Amendment rights will be restricted by arbitration. I am sympathetic with an individual claimant who appeals after he loses an arbitration and thus is subjected to the expense and effort of two trials. However, the quick and efficient resolution of a large portion of claims through arbitration mandates that the public interest must win out over the burden of inconvenience to several individuals.

## INCONSISTENCY WITH FEDERAL STATUTES AND THE RULES OF CIVIL PROCEDURE

■ Defendants contend not only that Local Rule 49 is inconsistent with the guarantees of the Seventh Amendment but that its provisions and the manner of its enactment present fatal inconsistencies with federal statutes and the Federal Rules of Civil Procedure.

The power of the Supreme Court to make rules for district courts is provided by 28 U.S.C. § 2072 which states in part:

> The Supreme Court shall have the power to prescribe, by general rules . . . the practice and procedure of the district courts of the United States in civil actions.
>
> Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution.
> . . .

In addition, each federal court is given its own rulemaking authority by 28 U.S.C. § 2071:

> The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

Defendants contend that since no rule enacted under the authority of 28 U.S.C. § 2071 may be inconsistent with a statute, Rule 49 is void because it conflicts with jury trial rights provided by 28 U.S.C. § 2072. However, as the Supreme Court said in *Colgrove*, "Congress used the language [in section 2072] for the sole purpose of creating a statutory right coextensive with that under the Seventh Amendment itself." 413 U.S. at 162, 93 S.Ct. at 2456. Moreover, section 2072 was not intended by Congress to nullify innovative changes nor deny the judiciary the flexibility and capacity for growth and adaptation which is the peculiar boast and excellence of the common law. *Id.* at 161–62, 93 S.Ct. at 2455. My prior discussion of the Seventh Amendment right to jury trial makes clear that Local Rule 49 does not abridge, enlarge, or modify any substantive right nor violate the right of jury trial. Nothing need be added to that discussion since section 2072 adds nothing to the constitution.

Similarly, defendants contend that Rule 83 of the Federal Rules of Civil Procedure which allows district courts to "make and amend rules governing its practice not inconsistent with [the Federal Rules of Civil Procedure]"[12] militates against compulsory arbitration under Local Rule 49.

The inconsistency perceived by defendants inheres in the fact that since they have properly demanded a jury trial under Fed. R.Civ.P. 38[13], they are entitled to an immediate trial by jury pursuant to Fed.R.Civ.P. 39.[14] However, Local Rule 49 avoids this

---

12. In its entirety, Fed.R.Civ.P. 83 states:

Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

13. Fed.R.Civ.P. 38 provides, in pertinent part:

(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

14. Fed.R.Civ.P. 39 states:

(a) By Jury. When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record,

immediate right to a jury trial upon timely demand by providing that "[a]ctions subject to arbitration pursuant to this rule shall automatically be referred to arbitration by the judge to whom the case has been assigned . . .." Local Rule 49(4)(a)(1).

The alleged operative language in Rule 39 is that "when trial by jury has been demanded . . . the action shall be designated upon the docket as a jury action" unless there is a stipulation and consent to trial by a court without a jury or the court finds that a right to trial by jury does not exist under the constitution or statute. I agree with defendants that neither of these exceptions to a jury trial are present under the facts of the instant case. I do not agree with their argument that the Rule 39 use of the word "shall" imposes a right to jury trial which must be free of all preconditions. Historically, the Supreme Court has held that if the right to jury trial is ultimately given, any preconditions on that right, as long as they are not unduly onerous, do not violate the Seventh Amendment. *Ex parte Peterson,* 253 U.S. 300, 309–10, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920). I do not interpret Rule 39 as providing a more expansive right to jury trial than the Seventh Amendment. Thus, I conclude that the Local Rule 49 provision for compulsory, pre-trial arbitration is not blatantly inconsistent with Fed.R.Civ.P. 38 and 39.[15]

Defendants' arguments against compulsory arbitration are really directed against a philosophical inconsistency between arbitration and trial by jury upon demand. See A. Miller, Statement to a Session of the Conference of Metropolitan District Court Judges on Rules and Rule Making, April 14, 1978, 79 F.R.D. 471, 495–96. Defendants contend that local rulemaking is an inappropriate forum for such a profound procedural change as arbitration. In support of this proposition, defendants argue that *Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960), prohibits such basic procedural innovations in local rulemaking. In *Miner,* the Supreme Court invalidated a local rule which authorized a court sitting in admiralty to order the taking of oral depositions. Fashioning a narrow decision,[16] the Court held that such a rule was plainly inconsistent with Admiralty Rules in that the Court in 1939 omitted the general civil rule authorizing depositions from among those civil rules adopted into the Admiralty Rules and that a court of admiralty does not have independent power absent a statute or rule to order the taking of discovery depositions. *Id.* at 648, 80 S.Ct. at 1305. However, I find that no such inconsistency exists between the arbitration rule and the general Federal Rules of Civil Procedure. Furthermore, the Court in *Miner* felt that the local rule was a "basic procedural innovation" which bears upon the ultimate outcome of the case and "though concededly 'procedural', may be of as great importance to litigants as many a

consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

**15.** In oral argument, defendants contended for the first time that the Federal Rules of Civil Procedure dealing with Judgments are inconsistent with Local Rule 49. Specifically, Rule 58 in relevant part provides that judgment shall be entered upon a general verdict of a jury, a decision by the court that a party shall recover only a sum certain or costs, a decision granting or denying other relief, or upon a special verdict. The defendants assert that Local Rule

49's provision for entry of judgment unless an appeal *de novo* is taken within twenty days is not mentioned in Rule 58 as authority for entry of judgment, and thus is inconsistent with the federal rules. I conclude that Local Rule 49 does not constitute inconsistency in contravention of Rule 83 since the arbitration rule does not conflict with any federal rule on judgments but rather adds another method by which judgment can be attained.

**16.** The *Miner* Court qualified its holding with this language:

"We deal here only with the procedure before us, and our decision is based on its particular nature and history."
363 U.S. at 649, 80 S.Ct. at 1305.

'substantive' doctrine . . . ." *Id.* at 650, 80 S.Ct. at 1305. Given the limited nature of the arbitration rule and the fact that no Seventh Amendment rights are violated by it, I conclude that Local Rule 49 is not a basic procedural innovation of the kind rejected by the Court in *Miner.*

Moreover, I find that Local Rule 49 was formulated in a very different fashion from the rule in *Miner.* There, the majority of district judges apparently decided that a local rule on depositions in admiralty was needed and they adopted it. In the instant case, it was the Department of Justice which suggested that an arbitration rule be implemented in this district as an experiment, for a limited time period. The purpose is to benefit the entire federal judicial system. The majority of this court's judges agreed to the proposal. Throughout its implementation, constant monitoring of the success of the arbitration rule is kept by the arbitration clerks and statistical reports are periodically sent to the Federal Judicial Center.

Wright and Miller in their treatise on Federal Practice and Procedure severely criticize local rulemaking for promulgating so many rules on various topics that no uniformity in the district courts is possible.[17] Recently Arthur Miller suggested that local rulemaking could profitably be used in conjunction with the Federal Judicial Center as a "test tube for the nation" so that constant monitoring of local rules might aid in formulating national procedure. A. Miller, Statement to a Session of the Conference of Metropolitan District Court Judges on Rules and Rule Making, April 14, 1978, 79 F.R.D. 471, 496–99. In my opinion, Local Rule 49 is just the sort of local rulemaking advocated by Professor Miller. Formulated as a pilot project to test a rule locally before implementing it on a national level, its aim is to foster uniformity rather than to destroy it as Wright and Miller's commentary suggested most local rules do.

In sum, I find no inconsistency of Local Rule 49 with the literal language of any Federal Rule or statute nor with the spirit of any specific rule or local rulemaking generally.[18]

## EQUAL PROTECTION ARGUMENT

In analyzing the arbitration rule in terms of equal protection,[19] defendants generally concede that the government can classify as long as such distinctions are rationally related to a legitimate governmental interest and are not so arbitrary and capricious that persons similarly situated will be treated unequally. *Shapiro v.*

---

**17.** Wright and Miller note that the drafters of Fed.R.Civ.P. 83 intended that local rules would only be used sparingly and where the Civil Rules deliberately left gaps to be filled in light of local needs. 12 *Wright & Miller, Federal Practice and Procedure: Civil* § 3151–53 (1973). In criticizing federal district courts for promulgating a myriad of local rules, the commentators quote one characterization of local rulemaking as "the soft underbelly" of federal procedure. *Id.* § 3152 at 218. In contrast, many courts interpret Rule 83 to allow broad discretion for local rulemaking which promotes the efficiency of the court. *Martinez v. Thrifty Drug and Discount Co.,* 593 F.2d 992, 994 (10th Cir. 1979).

**18.** Defendants argue in passing that arbitration may be invalid as an improper delegation of judicial functions to a nonjudicial officer. Clearly administrative agencies with similar adjudicative responsibilities as the arbitration board have long been recognized as not only proper but essential to the functioning of an efficient judicial system. *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Additionally, *Parker* and *Smith's Case* have held that a requirement providing that litigants initially proceed through a non-judicial officer before trial is not an improper delegation of judicial power where the right to appeal *de novo* to a court of record has been preserved. *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A.2d 932, 942–43 (1978); *Smith's Case,* 381 Pa. 223, 235, 112 A.2d 625, 631 (1955); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 448–49 (1978).

**19.** Obviously, equal protection under the Fourteenth Amendment does not technically apply here since this is a federal not state arbitration system. Consequently, defendants ground their equal protection allegation in Fifth Amendment due process.

*Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).[20]

Defendants argue that Local Rule 49 violates equal protection in several respects: a pilot program inherently treats litigants in this district differently from those in similar districts, the imposition of interest falls only on defendants who appeal from arbitration awards, and the classification of claims for arbitration based on amount in controversy and subject matter jurisdiction are arbitrary and bear no rational relationship to a legitimate governmental interest.

Admittedly, federal arbitration is an experimental program implemented in three districts nationwide. Each program has its own unique characteristics. This means that litigants in three federal districts arbitrate prior to trial while other litigants nationally do not, and that the procedures in each of those three districts vary. However, the allegedly "unequal treatment" in the government's plan has a rational basis far outweighing any possible equal protection violation. The local arbitration rule is a first step to develop a fast, efficient, and inexpensive system of dispute-resolution on a national scale. Reform can proceed one stage at a time. See *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Unfortunately, the price of planned progress may be temporary disparity. Here, such disparity is minimal. Additionally, defendants' equal protection argument based on geographic scope ignores the implicit authorization in Fed.R. Civ.P. 83 for district courts to make local rules which by their very nature will differ among districts.

The second equal protection challenge centers on this interest and cost provision of Local Rule 49(7)(d):

If the party who demanded a trial *de novo* fails to obtain a judgment in the district court, exclusive of interest and costs, more favorable to him than the arbitration award, he shall be assessed the amount of the arbitration fees and, if he is a defendant, he shall pay to the plaintiff interest on the arbitration award from the time it was filed, at the current legal rate of interest.

On its face, Local Rule 49 imposes costs on plaintiffs or defendants who appeal from arbitration awards but only taxes interest on defendants who appeal. Generally, cost provisions have been upheld as a valid deterrent for frivolous appeals and as a means to promote swift, efficient dispute-resolution. *Smith's Case,* 381 Pa. 223, 112 A.2d 625 (1955).[21] Similarly, Local Rule 49 implemented a system of costs and interest which rationally discourages meritless appeals. It is logical that taxing interest on defendants can best serve the system. More often than not, a plaintiff who loses an arbitration case will have no financial award from which to appeal. In that situation, allowing—or disallowing interest—is nonsense. Where plaintiff appeals from an award which he regards as inadequate and the second judgment is less than the arbitration award, plaintiff still should not be required to pay interest on the award. Plaintiff will have been penalized by both

---

**20.** At one point defendants argue for the use of a compelling governmental interest standard by alleging that arbitration infringes upon a fundamental right to a jury trial. I find no justification for applying any standard higher than rationality since no fundamental right to a trial by jury with certain procedural incidents as in common law is demanded by the Seventh Amendment as long as the substance of the right is preserved.

Cases dealing with arbitration have consistently held that there is no fundamental right to a jury trial free from preconditions. *Hines v. Elkhart General Hospital,* 465 F.Supp. 421 (N.D.Ind.1979); *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744, 750–51 (1977); *Everett v. Goldman,* 359 So.2d 1256 (La.1978); *Attorney*

*Gen. of Maryland v. Johnson,* 282 Md. 274, 385 A.2d 57 (1978); *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657, 667–68 (1977); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 441–43 (1978).

**21.** In *Smith's Case,* the court held that the payment of costs as a prerequisite to appeal did not unduly burden the right to jury trial and cited these examples of requirements which did not impose onerous conditions on the right to jury trial—giving bail for the payment of costs accrued and to accrue, furnishing security for the prosecution of the appeal and satisfaction of final judgment, paying a jury fee in advance of trial. 381 Pa. at 230–31, 112 A.2d at 629–30.

the lower recovery and the loss of interest which otherwise would have run from the time the arbitration award was entered. Conversely, these reductions will benefit the defendant and help repay the necessary costs of two trials. In contrast, requiring a defendant who loses an appeal from an arbitration award to pay interest is logical because plaintiff was deprived of the use of the money awarded to him while defendant appealed and lost. Since the interest provision of Local Rule 49 is rational it does not offend equal protection requirements.

Finally, defendants allege that the arbitration classification for the amount in controversy and subject matter jurisdiction do not bear a rational relationship to a legitimate governmental interest. They contend that the goals of arbitration promoting speedier administration of justice and efficient use of resources are not necessarily fostered by arbitrating $50,000 claims which mandate extensive preparation for the initial arbitration and frequently are appealed. The Pennsylvania Supreme Court has rejected a similar challenge based on the jurisdictional amount in *Smith's Case,* 381 Pa. 223, 112 A.2d 625 (1955). There, the court commented:

> [i]t is, however, too well established to require extended discussion or citation of authorities that all that the Constitution [22] demands is that the basis for classification be reasonable and founded upon a genuine and not merely artificial distinction, the test being, not wisdom, but good faith in classification. Statutory distinctions based on the amount involved in the litigation have been regularly upheld. *Id.* at 233, 112 A.2d at 631.

In fact, a jurisdictional limitation of $20 exists on the face of the Seventh Amendment's guarantee of the right to jury trial. Since jurisdictional categories abound throughout civil procedure and are universally upheld as rational, I find no equal protection problem with Local Rule 49's amount in controversy provision.

Defendants further contend that the subject matter categories are not areas necessarily suited to arbitration. Attorney General Griffin Bell's statement demonstrates that the categories were chosen after careful study and analysis:

> The [experimental arbitration bill] sets forth specific categories of cases which would automatically be referred to arbitration before trial. These cases were identified on the basis of three criteria. The first criterion is that the cases involve claims for money damages only. In such cases, often the only dispute is over the amount of money owed by one party to the other. In contrast, pleas for equitable relief would probably mean increased complexity and could require the continuing supervision of the court. Such cases would be inappropriate for arbitration.
>
> The second criterion is that cases referred to arbitration be limited to those in which the claim does not exceed $50,000. In cases with claims in the hundreds of thousands or millions of dollars, the cost of a subsequent trial and of any disincentives for demanding such a trial are very small, relative to the claim itself. It is our belief, based upon the experience in the states that, where larger amounts are involved in the suit, the likelihood of one litigant or another requesting a trial de novo is greatly increased. In addition, cases involving hundreds of thousands of dollars or more could very well be of such complexity that they would require arbitration proceedings of greater length than the speedy proceedings intended to be produced by the bill. As a result, suits over $50,000. are not mandatorily referred, but the parties to a money damage lawsuit of any amount may consent to arbitration under the procedures set forth in the bill.
>
> The final criterion is that the cases present predominantly factual issues, rather than complex legal questions, con-

---

22. In *Smith's Case* the Constitutional provision being discussed was Article III, section 7 of the Pennsylvania Constitution which forbade the passage of special laws. This parallels federal equal protection. .

stitutional claims, or novel issues of law which may establish important precedents. These matters are the province of the federal judiciary. With cases involving arbitration, referral under the bill is to occur only after the disposition of pretrial motions, which will allow for the pre-arbitration resolution by the district court judge of many legal issues.

By applying the foregoing three criteria to the federal civil docket, we have concluded that money damage tort and contract cases are the groups of cases that are most suitable for arbitration. Statement of Griffin Bell before the Committee on the Judiciary Concerning Arbitration on April 14, 1978.[23]

Although contending that these categories lack a rational basis, defendants offer little support for their assertion and suggest no alternative subject matter areas more suitable for arbitration. Defendants argue that the addition of more federal judges or resources would be the least restrictive means for promoting a fast and efficient trial system. However, there is no assurance that additional resources would remedy the problem, and certainly it would not provide an inexpensive alternative to trial. I conclude that the subject matter categories survive the test of rationality and do not infringe upon the equal protection clause.

In view of the foregoing analysis, I find that Local Rule 49 does not violate the Seventh Amendment or the Equal Protection Clause, nor is it inconsistent with section 2072 of Title 28 and the Federal Rules of Civil Procedure. Defendants' Motion to Prohibit Arbitration must be denied and an arbitration hearing should be scheduled as a matter of course.

**23.** Attorney General Bell goes on to state that Truth in Lending cases and some cases where the United States is a party should be excluded from federal arbitration due to their complexity and specialized material.